[662 NYS2d 110]

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant, v EDWARD D. CLAIRMONT et al., Respondents, et al., Counterclaim Defendants.

First Department, September 11, 1997

## APPEARANCES OF COUNSEL

*James D. Christo* of counsel, New York City *(Richard F. Russell* on the brief; *D'Amato & Lynch,* attorneys), for appellant.

*Bart J. Eagle* of counsel *(Charles N. Internicola* on the brief; *Vito R. Vincenti, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

MURPHY, P. J.

In December 1985, defendants purchased a one-unit interest in Hunters Square Commercial Properties, a limited partnership. Defendants paid for the investment, priced at $84,000, by tendering a check for $5,150 and a promissory note for the remaining $78,850. Payment of the promissory note was guaranteed by plaintiff, which required, as a condition of its guarantee, defendants' execution of an indemnification and pledge agreement obligating defendants to reimburse plaintiff for any amounts paid out under the guarantee. The indemnification and pledge agreement was executed on the same day that the investment was purchased.

Defendants failed to make the last three of the four annual installment payments required by the promissory note, whereupon plaintiff, after honoring its obligation under the guarantee and paying the amount in which defendants were in default, sought to recover that amount pursuant either to the promissory note—which it had been assigned and which it sought to enforce as a subrogee—or to the indemnification agreement executed by defendants in its favor. Defendants refused payment and this lawsuit ensued.

In answering the complaint, defendants have alleged that their investment in Hunters Square was induced by fraudulent representations contained in the Hunters Square private placement memorandum. They have alleged further that the various agreements executed in connection with their investment in Hunters Square, most notably the promissory note and indemnification agreement, must be viewed as inseparable from and dependent upon their agreement to invest and, accordingly, that if the investment agreement is rendered unenforceable by reason of fraud, the pendent transactions respecting the financing of the investment, too, should be deemed unenforceable.

Although we agree with the motion court that there are issues of fact as to whether defendants' investment in Hunters Square was fraudulently induced and agree also that fraud

may constitute a defense to payment of the promissory note executed by defendants in Hunters Square's favor,* we are, nonetheless, of the view that plaintiff is entitled to judgment based upon the indemnification agreement, which we regard as separate from defendants' agreements with Hunters Square and, thus, enforceable notwithstanding any fraud with which those latter agreements may have been affected.

As a preliminary matter, it should be stressed that, as the motion court found, there is no sustainable claim in this litigation that plaintiff has participated, either as a principal or as an aider and abettor, in any fraud. If plaintiff's right to indemnification, then, is to be deemed unenforceable. by reason of an underlying fraud, it will be only because enforcement of its contract of indemnification with defendants has been found to depend upon the validity of defendants' agreement with Hunters Square, which agreement has, in turn, been found to have been induced by fraud.

The extent to which contracts may be deemed interdependent, of course, depends upon the intent of the parties (*Rudman v Cowles Communications*, 30 NY2d 1, 13). And, while there may sometimes be triable issues presented as to whether parties intended their agreement to be separately enforceable or to hinge upon another agreement, we do not think that such issues have been raised in this litigation. To the contrary, we think it clear, as a matter of law, that the presently litigated indemnification agreement was intended to be enforceable regardless of the validity of the underlying investment agreement.

While it is true that the indemnification agreement was one of a number of executed almost contemporaneously agreements by which defendants came to purchase their interest in Hunters Square, and that the indemnification agreement would not have been entered into but for defendants' decision to purchase the investment, these circumstances alone do not justify the inference of contractual interdependence defendants would have drawn. Manifestly, one agreement may follow from and even have as its *raison d'etre* another and yet be independently enforceable. And, indeed, in the absence of some clear indication that the parties had a contrary intention, contracts manifesting separate assents to be bound are generally

---

* The motion court held that plaintiff was not a holder in due course of the promissory note because the promissory note, as drawn, was not a negotiable instrument. Plaintiff does not dispute this ruling on appeal.

presumed to be separable (*Ripley v International Rys.*, 8 NY2d 430, 438).

The contracts defendants would now have deemed unitary were in fact made by them with different parties—a circumstance weighing heavily in favor of contractual separability (*see, Rudman v Cowles Communications, supra,* at 13)—and for different purposes. The subscription agreement defendants executed with Hunters Square, of course, set forth the terms of defendants' participation in the limited partnership. The indemnification agreement, on the other hand, had as its exclusive and entirely separable focus the protection of the guarantor of defendants' obligation in the event that defendants' participation in the venture should terminate by reason of defendants' default. Indeed, it was precisely because plaintiff guarantor did not wish, in the event of a default by defendants, to have its recourse limited by defenses that might in such a situation be asserted against the partnership, that it required a separate indemnification agreement as a condition of its guarantee. Surely, it was clear at the time the subject agreements were entered into that if defendants defaulted upon the note drawn in favor of the partnership, and plaintiff thereafter covered the default pursuant to its guarantee, plaintiff would thereupon become subrogated to the partnership's rights under the note. It was similarly evident that if defendants had defenses to the note those defenses might well be asserted against plaintiff as subrogee, as in fact they have been here. It was then to assure itself of recourse unhampered by such defenses that the indemnification agreement was utilized. There is, indeed, no other explanation for the indemnification agreement; it would, if we were to accept defendants' hypothesis of contractual dependency, be entirely superfluous as it would provide the guarantor with recourse no greater than that which it would have had, in any case, as a subrogee.

A further unwarranted and, indeed, particularly curious consequence of accepting defendants' hypothesis of contractual interdependence would be to countenance the transformation of an indemnification agreement ostensibly drawn to protect plaintiff as guarantor of defendants' obligation into a contract of insurance for investors in the partnership. Defendants are, in essence, maintaining in this litigation that their agreement to indemnify plaintiff amounted to little more than an undertaking by plaintiff to cover their outstanding obligations to the partnership in the event the subscription agreement was subsequently revealed to be tainted by fraud. Such a read-

ing of the indemnification agreement borders on the perverse. Plainly, defendants purchased no coverage of any kind from plaintiff and plaintiff, far from assuming any risk on the defendants' behalf, sought in the indemnification agreement to assure that defendants would ultimately be accountable to it for any payments made under its guarantee of their obligation.

Finally, we note that this Court in *National Union Fire Ins. Co. v Williams* (223 AD2d 395) has already held agreements materially indistinguishable from those presently at issue to be separable. In rejecting the defendants' claims that "because the notes and the indemnification agreements were executed contemporaneously, they should be read together" (*supra,* at 396), the *Williams* Court observed, much as we have here, that "in exacting the indemnification agreements from defendants, plaintiff bargained for the right to proceed directly against the purchasers of the limited partnership interests as a condition of providing the bond to secure repayment of their obligations under the notes" (*supra,* at 397). To the extent that the Second Circuit's decision in *National Union Fire Ins. Co. v Turtur* (892 F2d 199) may be read to require a trial on the issue of contractual separability in circumstances such as those presented at bar and in *Williams,* we decline to follow it. *Turtur,* it should be pointed out, antedates *Williams,* and it is fair to assume that if the chronology had been reversed, *Turtur,* which did, after all, purport to apply New York law, might well have been differently decided.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered May 31, 1996, which denied plaintiff's motion for summary judgment on its claims based upon a promissory note and an indemnification and pledge agreement, should be modified, on the law, to the extent of granting plaintiff's motion insofar as it is premised upon the indemnification agreement, and otherwise affirmed, without costs.

ELLERIN, NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered May 31, 1996, modified, on the law, to the extent of granting plaintiff's motion for summary judgment insofar as it is premised upon the indemnification agreement, and otherwise affirmed, without costs.