[690 NYS2d 57]

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant, v MARY A. WORLEY, Respondent.

First Department, May 13, 1999

### APPEARANCES OF COUNSEL

*Jason M. Lesko* of counsel (*Richard F. Russell* on the brief; *D'Amato & Lynch,* attorneys), for appellant.

*Scott Ozmun* of counsel (*Whitehurst, Harkness, Ozmun, & Archuleta,* attorneys), for respondent.

### OPINION OF THE COURT

NARDELLI, J. P.

Defendant, a Texas resident, purchased an interest in a Texas limited partnership known as Virgin Isle Hotel Limited Partnership (Partnership). She paid $2,750 in cash and executed and delivered to the Partnership a promissory note for $47,250, which provided for six annual payments of principal and interest.

Plaintiff, National Union Fire Insurance Company (National Union), issued a financial guarantee bond whereby payment of the limited partners' notes was guaranteed by plaintiff. However, as a condition of the issuance of this bond, each limited partner whose note was to be guaranteed had to indemnify National Union against any loss resulting from a default. Thus, each limited partner, including defendant herein, executed an indemnification and pledge agreement, which provided that it was deemed to have been executed in the State of New York and that liabilities of the parties would be determined in accordance with the laws of the State of New York. Also, defendant agreed that any proceeding brought against her by reason of the indemnification and pledge agreement would be brought in any court of competent jurisdiction in the State of New York in addition to any other court in which the action could properly be brought. Defendant executed the indemnification and pledge agreement in Texas.

Thereafter, plaintiff issued a bond. The notes, through a number of endorsements, were sold to MONY Legacy Life Insurance Company and Mony Pension Corporation. Defendant failed to make payments that came due on the note and thereafter, as a result of her default, plaintiff made payments to the Bank of New York (as agent for MONY) in the aggregate amount of $21,143.25. Plaintiff then commenced this action seeking recovery of the amounts due and owing on the notes.

The IAS Court denied National Union's motion for summary judgment and granted defendant's motion for summary judgment dismissing the action upon the ground that General Obligations Law § 5-1402 precludes enforcement of forum selection clauses where the amount in issue is less than $1 million and further, that the action was a species of imported litigation and New York an inconvenient forum.

■ The IAS Court erred in its interpretation of General Obligations Law § 5-1402. This section is not a limitation on the use and effectiveness of forum selection clauses. Rather, it contains a statutory mandate that a clause designating New York as the forum "shall" be enforceable, in cases involving $1 million or more, regardless of any inconvenience to the parties. Thus, General Obligations Law § 5-1402 would preclude a New York court from declining jurisdiction even where the *only* nexus is the contractual agreement (*see, Credit Francais Intl. v Sociedad Financiera de Comercio,* 128 Misc 2d 564). In fact, CPLR 327 (b) was amended to provide that a court shall not dismiss any action on the ground of inconvenient forum when

the action applies to a contract to which section 5-1402 of the General Obligations Law applies. However, neither CPLR 327 nor the General Obligations Law provides that forum selection clauses will not be enforced in New York in cases involving *less* than $1 million. Thus, subdivision (2) of section 5-1402 reads, "Nothing contained in this section shall be construed to affect the enforcement of any provision respecting choice of forum in any *other* contract, agreement or undertaking" (emphasis added). Contrary to the position of the IAS Court, in actions involving less than $1 million, forum selection clauses are enforceable according to their terms.

Further, by agreeing to the forum selection clause in the indemnity agreement, defendant specifically consented to personal jurisdiction over her in the courts of New York and thereby waived any basis to dispute New York's jurisdiction (*see, National Union Fire Ins. Co. v Frasch*, 751 F Supp 1075, 1078; *National Union Fire Ins. Co. v Weir*, 131 AD2d 380). As noted, the indemnity agreement provides, *inter alia,* that "any action or proceeding of any kind against the undersigned arising out of or by reason of this Indemnification and Pledge Agreement may be brought in any state or federal court of competent jurisdiction in and of the County and State of New York, in addition to any other court in which such action might properly be brought." Defendant contends that the term "court of competent jurisdiction" must be taken to mean a court that has both subject matter and personal jurisdiction over defendant, on some *other* independent basis. However, if a New York court had such an independent basis, the consent to jurisdiction in the indemnification agreement would be unnecessary and superfluous. Therefore, the term "competent jurisdiction" refers to the subject matter jurisdiction of the court in question. The Supreme Court obviously falls within that category. Since the forum selection clause in the indemnity agreement is not unenforceable by the terms of General Obligations Law § 5-1402 and defendant's consent to jurisdiction in the indemnity agreement is valid, defendant is subject to personal jurisdiction in New York.

The further ground cited by the IAS Court of forum non conveniens as a basis for its dismissal is also without merit. Defendant asserts that she presently resides in Texas with limited financial resources. However, while we sympathize with defendant's plight, these stated reasons are insufficient to excuse her from her contractual undertaking in an investment made in a limited partnership for tax reasons, among others.

The party seeking a change of forum must clearly establish that another jurisdiction is a more appropriate forum (*Roman v Sunshine Ranchettes*, 98 AD2d 744). In addition, where a party to a contract has agreed in advance of litigation to submit to the jurisdiction of a court, she is later precluded from attacking that court's jurisdiction on grounds of forum non conveniens (*Arthur Young & Co. v Leong*, 53 AD2d 515, 516, *appeal dismissed* 40 NY2d 984). While the IAS Court dismissed this complaint on the basis that this action "is a species of imported litigation," National Union's principal place of business is located at 70 Pine Street, New York, New York and plaintiff is therefore a resident of New York County (*see*, CPLR 503; *McMahan & Co. v Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F Supp 833, 834). Indeed, besides this nexus, there are other significant connections between this action and New York. The indemnity bond was issued here; the note was negotiated to the Bank of New York, as agent, which is based in New York; and the payments made by plaintiff National Union under its indemnity bond were made to the bank in New York. Further, New York law governs the note and indemnity agreement and the courts in New York, therefore, have the requisite expertise to apply the principles of New York law that govern plaintiff's claims against defendant pursuant to the note and indemnity agreement. Another critical factor is that the dismissal of this case severely prejudiced plaintiff since the Statute of Limitations in Texas applicable to claims on the note and under the indemnity agreement have now run and plaintiff is barred from commencing an action on such claims in a Texas court. Further, defendant has substantially delayed in invoking the forum non conveniens doctrine and such a delay, in itself, is a reason for denial of such a motion (*see, Anagnostou v Stifel*, 204 AD2d 61; *Bussanich v United States Lines*, 74 AD2d 510; *Corines v Dobson*, 135 AD2d 390). Defendant did not seek a dismissal on the instant ground until nearly 21 months after the commencement of this action and after National Union had served discovery and moved for summary judgment.

Finally, the court erred in denying plaintiff's motion for summary judgment. Defendant admitted executing the note and the indemnity agreement. She also admitted her failure to make the last two payments due under the note. Further, it is uncontested that National Union made two payments to the Bank of New York to cure the defaults and the record shows that following its last payment, the note was transferred to

National Union, which is now its holder. Defendant's contention that National Union became a holder of the note through a "bulk transfer" and, therefore, is not a holder in due course and thus cannot recover is without merit.

Initially, National Union did not become a holder of the note when it issued its bond. National Union issued the bond in favor of the Bank of New York, as agent for Contitrade Services Corporation (Contitrade). The limited partner notes, including defendant's, were thereupon negotiated to Contitrade. Contitrade subsequently sold its interest in the loan to MONY and the notes were endorsed by Contitrade to Bank of New York as agent for MONY. It was the regular course of Contitrade's business to transfer notes. UCC 3-302 (3) (c), which governs bulk transfers "not in regular course of business of the transferor", would therefore not apply to the ultimate transfer of the note to National Union.

While defendant asserts that a representative of a brokerage induced her to invest in the partnership, defendant has failed to plead, and has not made any showing of, fraud in the inducement with respect to the indemnity agreement she signed in favor of plaintiff. Thus, defendant has not specified any material misrepresentations contained in the partnership offering materials or otherwise made to her for which plaintiff was responsible. The elements of fraudulent inducement are: a false representation of a material fact with scienter; reliance thereon by defendant to its detriment (*Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403). Further, the person making the representations must be, or acting on behalf of, the other party to the contract. Fraud by a third party is not effective to vitiate contractual obligations (*Federal Ins. Co. v Mallardi,* 696 F Supp 875, 884). Defendant herein did not set forth any showing of fraud that would undermine plaintiff's rights. Thus, defendant's only fraud allegations were that she was induced to invest in the partnership by misrepresentations made to her by the representative of the brokerage, who said an investment in the partnership would result in future tax writeoffs and money for retirement. However, there were no allegations that this representative or the brokerage were parties to either the note or indemnity agreement. Moreover, she does not show that the representative's statements were false. She does not assert she failed to realize any tax benefits from the investment or that the broker knew when he made the alleged misrepresentations that defendant would not realize any tax benefits or save any money.

In addition, plaintiff is entitled to performance by the defendant or damages for breach of the indemnity agreement. There are no allegations that plaintiff was a party to a fraud which affected the indemnity agreement. Thus, as we have previously noted,

"While the respective agreements are unquestionably part of the same overall transaction, each involves different parties and serves a distinct purpose * * *

"It bears emphasis that plaintiff's involvement in the subject transaction is peripheral, even with respect to the related financing obtained from the lender pursuant to the notes. Plaintiff is merely the guarantor of payment on the notes, an obligation that runs only nominally to the limited partnership, which procured the bond, and ultimately to the holder in due course (which at this juncture, is neither the limited partnership nor its lender) * * *

"Defendants do not allege that their assent to indemnify plaintiff was obtained by fraud. Defendants obviously derived a benefit from the guarantee of their credit and, given plaintiff's peripheral involvement in the transaction, they will not be heard to belatedly complain that the indemnification agreements are tainted by illegality [citation omitted]" (*National Union Fire Ins. Co. v Williams*, 223 AD2d 395, 396-397; *see also, National Union Fire Ins. Co. v Clairmont*, 231 AD2d 239, *lv dismissed* 92 NY2d 868; *National Union Fire Ins. Co. v Allen*, 232 AD2d 80).

Absent allegations that National Union was party to a fraud which affected the indemnity agreement, the allegations of fraudulent inducement with respect to the execution of the note would not affect plaintiff's rights under the separately executed indemnity agreement.

Accordingly, the order of the Supreme Court, New York County (Emily Goodman, J.), entered on August 11, 1997, which denied the motion by plaintiff for summary judgment and granted defendant's motion to dismiss the complaint, should be reversed, on the law, without costs or disbursements, the motion by plaintiff for summary judgment granted and the motion by defendant denied. The matter is remanded for further proceedings in the Supreme Court to calculate the amounts due under the notes.

RUBIN, TOM and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered August 11, 1997, reversed, on the law, without costs or disbursements,

the motion by plaintiff for summary judgment granted and the motion by defendant to dismiss the complaint denied, and the matter remanded for further proceedings.