*179 OPINION OF THE COURT
Daniel Palmieri, J.
This motion by the defendant pursuant to CPLR 3211 (a) for an order dismissing the complaint without prejudice on the ground of improper venue or, in the alternative, for a stay of proceedings pending the outcome of a complaint made by the defendant to the North Carolina Department of Labor and any proceeding before the North Carolina General Court of Justice, is in all respects denied.
It is undisputed that the plaintiff Arbor Commercial Mortgage, LLC is a limited liability company organized and existing under New York law, with its principal place of business at Earl Ovington Boulevard in Uniondale, New York. The defendant Henry Martinson, a Charlotte, North Carolina, resident, was its employee as director of Arbor’s office in that North Carolina city. The terms and conditions of employment were established in a letter agreement dated November 22, 2004, as modified in writing (modification eff Dec. 1, 2005). The agreement included a salary and commissions on loans the defendant originated. All of the defendant’s work was done in North Carolina.
The employment relationship lasted from November 2004 until March of 2007, when the defendant resigned. On May 10, 2007 an attorney representing the defendant wrote to one of plaintiffs officers in New York demanding that certain sums allegedly still owed be paid to the defendant under North Carolina’s Wage and Hour Act, and the parties’ written employment agreement. In that letter, counsel asserted that under the agreement and North Carolina’s statutory scheme, Arbor would be liable to pay Martinson nearly $68,000 in wages, commissions, interest, liquidated damages penalties and attorney’s fees.
The plaintiff responded with this action, commenced on May 25, 2007, in which it seeks a declaration that it had paid the defendant all he was owed, and that it had no further obligation to him under their employment agreement. On June 18, 2007 the defendant filed a claim with the North Carolina Department of Labor (NCDOL). That claim is still pending. The defendant also raises the role of the North Carolina General Court of Justice, which is a court from which a review of NCDOL determinations may be sought, and which is also available to the parties as a plenary forum. However, he does not claim that any action in the North Carolina courts is currently pending.
On this motion, Martinson asserts that the correct venue for the parties’ dispute is North Carolina in view of his residence *180 and his pending NCDOL claim. He contends that if he is forced to proceed in New York he would be deprived of his rights under North Carolina law, and would be exposed to significantly greater expense and personal hardship. Arbor responds that he agreed to litigate in New York in his employment agreement, and points to several other procedural and substantive defects in the motion as well.
Initially, the court must address the fact that the attorney who apparently prepared the initial motion papers, Thomas T. Loder, Esq. (the author of the letter demand referred to above), is not admitted to practice in New York. His statement is identified as an affirmation, but does not contain any language about his being admitted to practice in New York, does not state that it is made under the penalties of perjury, and gives his address as Duane Morris, LLP, 30 South 17th Street, Philadelphia, Pennsylvania. Further, counsel for the plaintiff provides proof that Mr. Loder is not admitted here by way of a search on the New York State court system’s Web site for locating New York attorneys, the negative results of which are annexed to counsel’s affirmation. There is no response to the foregoing.
While the Duane Morris firm does have an office in New York, that is of course insufficient as a basis for an appearance by one of its attorneys if he or she has not been admitted. If Mr. Loder wished to appear, the proper course would have been a simple application for admission pro hac vice under Rules of the Appellate Division, Second Department (22 NYCRR) § 690.3. The statement he made as part of the moving papers therefore must be disregarded as legally incompetent, as it is neither an acceptable affirmation nor an affidavit. Both he and his firm are admonished that in the future submission of such a document will lead to immediate dismissal of any related application.
Nevertheless, the court will reach the merits here because, in addition to the Loder statement, the defendant has submitted his own affidavit, the essential facts are undisputed, and the legal arguments Eire contained in a memorEmdum of law that is signed not only by Loder but by one John Dellaportas, who gives his address as Duane Morris LLF] 1540 Broadway, New York, New York. The court notes that Mr. Loder’s affirmation is also essentially repeated in the reply papers by yet another lawyer who states that he is admitted to practice in New York, although this, standing alone, cannot serve to correct the defect in the moving papers. (See Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380 [1st Dept 2006]; Peterkin v City of *181 New York, 293 AD2d 244 [2d Dept 2002].) As noted, however, other factors render dismissal on this procedural ground unnecessary.
Turning to the merits, it is clear that no basis for dismissal lies under CPLR 3211 (a). Placing venue in an allegedly improper situs is addressed in article 5, and the remedy is a transfer from one county to another within New York, not dismissal of the action. (CPLR 510, 511.) Dismissal might have been sought under CPLR 3211 (a) if another action or proceeding were pending in a North Carolina court (CPLR 3211 [a] [4]), but as noted there is no claim that such action or proceeding exists.* The only valid basis raised by the defendant in support of dismissal is the doctrine of forum non conveniens, codified in CPLR 327, which is addressed below.
However, the plaintiff has raised the employment agreement as a basis for this court’s retaining jurisdiction, which agreement contains a choice of law, consent to jurisdiction and forum selection provision. This bears on the court’s subject matter jurisdiction, an issue which may be raised by the parties or by the court itself sua sponte (see e.g. Signature Health Ctr., LLC v State of New York, 42 AD3d 678, 679 [3d Dept 2007], citing Matter of Fry v Village of Tarrytown, 89 NY2d 714 [1997]). It therefore will be addressed here first. In its entirety, the relevant provision is as follows:
“This Agreement shall be deemed to be entered into in the State of New York and interpreted in accordance with the laws of the State of New York. You voluntarily submit to the jurisdiction of the Supreme Court of the State of New York, County of Nassau for the resolution of any disputes that may arise hereunder. If any of the rights granted by the terms of this Agreement are held to be in any way unenforceable or invalid, then those rights and terms shall be severed and the rest of the Agreement shall remain enforceable.”
Initially, the law of this State will be applied in the interpretation of the foregoing clause. Choice of law provisions in contracts generally will be upheld as long as the chosen law bears a “reasonable relationship” to the parties or the transaction. (Welsbach Elec. Corp. v MasTec N. Am., Inc., 7 NY3d 624, *182 629 [2006].) As the plaintiff is a New York entity and the contacts the defendant had and continued to have even after the dispute arose were with persons in New York, this clearly has been met. In the present case the defendant does not argue otherwise, but asks that North Carolina’s statutory scheme be given precedence as a matter of policy — that is, North Carolina’s policy.
However, this would turn New York’s choice of law analysis on its head. The only time a New York court should hesitate to enforce an agreed choice of law on policy grounds is when the law to he applied is “truly obnoxious” to New York law (Cooney v Osgood Mach., 81 NY2d 66, 79 [1993]), but here this was the very law selected by the parties. Put somewhat differently, to eschew a foreign law it is New York’s law that must be offended by applying such foreign law, not vice versa, and thus there is no basis for ignoring the contractual provision above. Indeed, the court notes that although he advances statements of legislative purpose found in North Carolina’s Wage and Hour Act, as well as various provisions setting forth the remedies available, the defendant has not demonstrated how applying relevant New York law would actually offend North Carolina law.
Nor should such enforcement be denied based on the forum selection provision.
The court agrees with the defendant that the second sentence of the above-quoted provision does not establish New York as the exclusive or only possible forum, as it lacks language indicating that this was the intention of the parties, and/or that they had expressly waived resort to any forum other than New York (cf. Boss v American Express Fin. Advisors, Inc., 15 AD3d 306 [1st Dept 2005], affd 6 NY3d 242 [2006]; see also Mena Films, Inc. v Painted Zebra Prods., Inc., 13 Misc 3d 1221[A], 2006 NY Slip Op 51937[U] [Sup Ct, NY County 2006, Moskowitz, J.]).
At best, however, this means that a North Carolina court (were it to apply New York law) would not necessarily be deprived of jurisdiction by the agreement if a case were brought before it. That is of small comfort to the defendant, because the only court proceeding is here in New York, where jurisdiction clearly lies and where the law strongly favors the plaintiff regarding the selection of forum.
“A contractual forum selection clause is prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or over *183 reaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court.” (LSPA Enter., Inc. v Jani-King of N.Y., Inc., 31 AD3d 394, 395 [2d Dept 2006]; see also Brooke Group v JCH Syndicate 488, 87 NY2d 530 [1996]; Boss v American Express Fin. Advisors, Inc., supra.)
These showings have not been made. Aside from the North Carolina policy argument, discussed above, the defendant complains of economic hardship and time away from his family but does not demonstrate how it would effectively deprive him of his day in court to litigate in New York, as he agreed to do. It also should be remembered that the action in New York was commenced in response to defendant’s own demands for payment under the very agreement that contained the forum selection clause. Under such circumstances, there is no sound reason not to enforce the latter.
The foregoing also disposes of any separate forum non conveniens ground for dismissal, as where a party to a contract has agreed to submit to the jurisdiction of a particular court, that party is precluded from attacking the court’s jurisdiction on this ground. (Sterling Natl. Bank v Eastern Shipping Worldwide, Inc., 35 AD3d 222, 223 [1st Dept 2006]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Worley, 257 AD2d 228 [1st Dept 1999].)
The defendant cannot make the requisite showings for a dismissal under the common law and CPLR 327 in any event. On a motion to dismiss or stay proceedings on a ground of forum non conveniens, the burden is on the movant to demonstrate the relevant private or public interest factors which militate against a New York court accepting the litigation. (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 478-479 [1984]; Korea Exch. Bank v A.A. Trading Co., 8 AD3d 344 [2d Dept 2004].) Among the factors to be considered are residency, potential hardship to proposed witnesses, availability of an alternative forum, situs of the underlying action, and the burden on the New York courts, with no one single factor controlling. (Stravalle v Land Cargo, Inc., 39 AD3d 735 [2d Dept 2007]; Wentzel v Allen Mach., 277 AD2d 446 [2d Dept 2000].)
Here, residency and the availability of a North Carolina forum have been demonstrated, but on balance this is not enough. No proposed witnesses other than defendant himself have been *184 identified. It is also important to note that although the contract was performed in North Carolina, the parties’ dispute does not have to do with the circumstances of his employment or how well the defendant did his job. Rather, the issue here is simply what he is owed under the employment agreement, which is primarily a matter of contract interpretation under New York law, and simple calculations. Further, given the absence of any specific example of how litigating in New York would result in a significant income loss that would seriously affect the defendant and his family, the hardship he describes amounts to little more than inconvenience. Finally, there is no demonstrable burden on this court as the forum agreed to by the parties. Therefore, there is no sound basis for a stay or dismissal of proceedings before this court. (Cf. Rosenberg v Stikeman Elliott, LLP, 44 AD3d 840 [2d Dept 2007] [dismissal granted; legal malpractice action arose in Montreal, Canada, probate proceedings taken by Canadian attorneys, to which Canadian law would apply; mere residence/domicile of plaintiff in New York insufficient]; Brinson v Chrysler Fin., 43 AD3d 846 [2d Dept 2007] [dismissal granted; personal injury action, accident in North Carolina, 11 essential nonparty witnesses in that State identified, marginal nexus to New York, plaintiffs dual residency questionable].)
Accordingly, the motion is denied in its entirety. As it appears that no answer has been served, the defendant is reminded of his obligation to do so pursuant to CPLR 3211 (f).

 This statement is not to be interpreted to mean that the result here would necessarily have been different had an action been commenced in North Carolina.