Advance Serv. Group, LLC v Vision Home Bldrs. LLC (2024 NY Slip Op 50843(U))

[*1]

Advance Serv. Group, LLC v Vision Home Bldrs. LLC

2024 NY Slip Op 50843(U)

Decided on July 2, 2024

Supreme Court, Kings County

Joseph, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 2, 2024
Supreme Court, Kings County

Advance Service Group, LLC, Petitioner(s)

against
Vision Home Builders LLC, and JEFFREY MCCREARY, Respondent(s), FIRST KEYSTONE BANK, Garnishee

Index No. 514532/2023

Plaintiff/Petitioner:
ADVANCE SERVICE GROUP LLC
Attorney/Firm For Plaintiff:
WELLS LAW P.C.
229 WARNER RD
LANCASTER, NY 14086-1040
Defendant/Respondent:
VISION HOME BUILDERS LLC
MCCREARY, JEFFREY
FIRST KEYSTONE BANK
Attorney/Firm For Defendant:
FALCON RAPPAPORT & BERKMAN LLP
RICHARD E. WELTMAN 265 Sunrise Highway, Suite 50 Rockville Centre, New York 11570
(516) 599-0888

Ingrid Joseph, J.

The following e-filed papers read herein:
NYSCEF Nos.:
Notice of Motion/Petition/Affidavits Annexed
Exhibits Annexed 1-8; 16
Affirmation in Opposition/Affidavits Annexed/Exhibits Annexed 11; 13
Summons and Complaint/Judgment/Affidavits Annexed
Exhibits Annexed #514214/2022 1-11
In this action, Advance Service Group, LLC ("Petitioner") moves (Motion Seq. 1) for an order pursuant to CPLR § 5225(b) and CPLR § 5227 directing First Keystone Bank ("Garnishee") to turn over all monies and/or property held by Garnishee. Vision Home Builders LLC ("Vision") and Jeffrey McCreary ("McCreary") (Collectively "Respondents") have opposed this motion on the ground that the court does not have jurisdiction over Garnishee.
This matter was commenced via special proceeding under CPLR Article 52. The Verified Petition was filed May 16, 2023. Respondents' Answer was filed October 4, 2023. In its Petition, Petitioner states that on June 28, 2022, it received a judgment in the Kings County Supreme Court, in Advance Service Group LLC v Vision Home Builders LLC and Jeffrey McCreary Index #514214/2022, wherein Petitioner entered judgment by confession against Judgment Debtors, jointly and severally, in the amount of $234,278.44. Petitioner asserts that it served First Keystone Bank an Information Subpoena with Restraining Notice and Exemption Claim Forms to be served on Jeffrey McCreary, which have not been filed or returned to date. Petitioner states that based on the examination pursuant to the Information Subpoena, Garnishee is retaining at least $120,868.30 in several accounts under Jeffrey McCreary's name and that the judgment remains unpaid and wholly unsatisfied.
In opposition, Respondents argue that the court lacks jurisdiction over the Garnishee. Respondents state that Petitioner failed to file an affidavit in support of its Petition. Additionally, Respondents claim that the accounts at issue are located at a Pennsylvania community bank which, so far as Respondents are aware, does not maintain any branches or conducts any business in New York and that it maintains all of its customers and banking operations within Pennsylvania. Moreover, Respondents claim that Pennsylvania Law prohibits turnover of proceeds because the funds in one of the Garnishee's accounts at issue is a joint account held in the names of nonparty Kayla McCreary and her parents, nonparty Valerie McCreary and Respondent Jeffrey McCreary, but that the funds belong solely to Kayla McCreary. Respondent also claims that he has disclaimed legal or beneficial ownership over his daughter's account. Respondent contends that Pennsylvania's Multiple-Party Accounts Act states that a joint account, belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of different intent. Petitioner also states that the other two restrained accounts constitute tenancy by the entirety accounts and are thus wholly exempt from creditor enforcement under Pennsylvania law.
In Reply, Petitioner argues that Respondents lack standing to assert a personal jurisdictional defense on behalf of Garnishee, who was served with process but has not appeared in this action or opposed the motion. Additionally, Petitioner asserts that assuming arguendo that Respondents could assert a jurisdictional defense on behalf of Garnishee, they have failed to submit any admissible evidence, and that their attorney affirmation alone is insufficient to [*2]support a motion to dismiss for lack of personal jurisdiction and to rebut a prima facie showing of jurisdiction.
A party seeking to assert personal jurisdiction bears the ultimate burden of proof to establish a basis for such jurisdiction (Clevenger v Yuzek, 222 AD3d 931 [2d Dept. 2023]; WCVAWCK—Doe v. Boys & Girls Club of Greenwich, Inc., 216 AD3d 1 [2d Dept. 2023]; see Sacco v. Reel—O—Matic, Inc.,183 AD3d 567 [2d Dept. 2020]). The facts alleged in the complaint . . . are deemed true and construed in the light most favorable to the plaintiff, and all doubts are to be resolved in favor of the plaintiff (Id.). The defense of lack of jurisdiction based on improper service is personal in nature and may only be raised by the party improperly served (see Lehman Brothers Bank v Hickson, 186 AD3d 1348 [2d Dept. 2020]; Rhoe v Reid, 166 AD3d 919 [2d Dept. 2018]; Rhoades v Westchester County Bd. of Elections, 115 AD3d 958 [2d Dept. 2014]; Wells Fargo Bank, N.A. v Bowie, 89 ad3D 931 [2d Dept. 2011]; Home Sav. of America, F.A. v Gkanios, 233 AD2d 422 [2d Dept. 1996]).
Here, the court finds that Respondents lack standing to assert a lack of jurisdiction defense on behalf of Garnishee who was served via their Regional Branch Administrator on June 9, 2023, and has failed to timely file opposition to Petitioner's motion or a pre-answer motion to dismiss asserting the defense of lack of jurisdiction. Assuming arguendo that Respondents had standing to assert a jurisdictional defense on behalf of the garnishee, Respondents have only submitted an affirmation of their attorney which is insufficient to rebut Plaintiff's claims, [FN1]
that Garnishee is subject to personal jurisdiction in New York because New York courts have the power to issue a judgment ordering the turnover of out-of-state assets, which is not limited to judgment debtors, but also applies equally to garnishees, and that New York courts have the power to command a garnishee present in the state to bring out-of-state assets under the garnishee's control into the state.
Assuming arguendo that Respondents have sufficient standing to assert a lack of jurisdiction defense on behalf of Garnishee, the court addresses the parties' remaining contentions as follows:
In order to determine whether the laws of New York or Pennsylvania apply, the court must first determine whether there is an actual "conflict" between the jurisdictions' laws for each state before engaging in a choice of law analysis. The burden is on the party asserting a conflict to demonstrate its existence (Marrwe of Allstate Ins. Co. [Stolarz — New Jersey Mfrs. Ins. Co., at 904; Portanova v. Trump Taj Mahal Assoc., 270 AD2d 757 [3d Dept. 2000]). Once a conflict of laws is established, the court must then consider which jurisdiction, is applicable based on its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation, an analysis often called "interest analysis" (K.T. v. Dash, 37 AD3d 107 [1st Dept. 2006]). Generally, under New York choice-of-law principles, courts apply the law of the forum to procedural questions and, to substantive issues, the law of the jurisdiction with the most significant relationship to the dispute (see Davis v. Scottish Re Group Ltd., 30 NY3d 247 [2017]; see also Indosuez Intl. Fin. v. National Reserve Bank, 98 NY2d 238, [2002]; Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], 81 NY2d 219 [1993]; Zeevi & [*3]Sons v. Grindlays Bank, 37 NY2d 220, [1975]). The framework of this analysis raises two inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss" (see Padula v. Lilarn Props. Corp., 84 NY2d 519 [1994]; Schultz v. Boy Scouts of Am., Inc., 65 NY2d [1985]).
Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring. If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders (Cooney v. Osgood Mach., 81 NY2d 66, [1993]). Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs (Schultz v. Boy Scouts, supra). The duty of care owed by a bank to third parties is a conduct-regulating rule (see Elmaliach v. Bank of China Ltd., 110 AD3d 192, [1st Dept. 2013]; citing Licci v. Lebanese Canadian Bank, 672 F.3d 155, 158 [2d Cir. 2012]; Wultz v. Bank of China Ltd., 865 F.Supp.2d 425, [SDNY 2012]). In contract cases, courts apply a "center of gravity or grouping of contacts" test to determine which jurisdiction—New York or a foreign state—has "the most significant relationship to the transaction and the parties" (Zurich Ins. Co. v Shearson Lehman Hutton, 84 NY2d 309 [1994]; see Unitrin Direct/Warner Ins. Co. v Brand, 120 AD3d 698 [2d Dept. 2014]; MLRN LLC v U.S. Bank, National Association, 217 AD3d576 [1st Dept. 2023]; Eccles v Shamrock Capital Advisors, LLC, 2024 NY Slip Op. 02841 [2024]). 
Generally, a nondomiciliary is subject to the jurisdiction of a New York court if it has purposefully transacted business within the State and there is a "substantial relationship" between this activity and the plaintiff's cause of action (Keutter v McFadden Oil Corp., 71 AD2d 460 [1988]; Fanelli v Latman, 202 AD3d 758 [2d Dept. 2022]; see also New York Banking Law § 200-b). A contractual forum selection clause is prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court (Somerset Fine Home Building, Inc., 185 AD3d 752 [2d Dept. 2020]; Lifetime Brands, Inc., v Garden Ridge, L.P., 105 AD3d 1011 [2d Dept. 2013]; Creative Mobile Technologies, LLC v Smart Modular Technologies, Inc., 97 AD3d 626 [2d Dept. 2012]). Parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract (Somerset Fine Homes Buildings, Inc. at 753). Thus, a forum selection clause will be given effect in the absence of a 'strong showing' that it should be set aside (U.S. Merchandise, Inc. v L & R Distributors, Inc., 122 AD3d 613 [2d Dept. 2014]; Horton v Concerns of Police Survivors, Inc., 62 A.D..D 836 [2d Dept. 2009]). Although "[a]s a general rule, only parties in privity of contract may enforce terms of the contract such as a forum selection clause found within the agreement, under the "closely related" doctrine, a forum selection clause may also be enforced against a non-signatory, "where the non-signatory and a party to the agreement have such a 'close relationship' that it is foreseeable that the forum selection clause will be enforced against the non-signatory" (see CPLR 301; Sutton v Houllou, 191 AD3d 1031 [2d Dept 2021]; Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d 116 [1st Dept 2020]; Universal Inv. Advisory SA v Bakrie Telecom PTE, Ltd., 154 AD3d 171, 179 [1st Dept 2017]).
General Obligations Law § 5-1402 provides that a party may maintain an action in New York against a foreign defendant if the parties have entered into an agreement that (i) contains a [*4]New York forum selection clause, (ii) contains a New York choice of law provision, and (iii) involves a transaction that in the aggregate is over $1 million. This section, however, is not a limitation on the use and effectiveness of forum selection clauses. Rather, it contains a statutory mandate that a clause designating New York as the forum "shall" be enforceable, in cases involving $1 million or more, regardless of any inconvenience to the parties. Therefore, in actions involving less than $1 million, forum selection clauses are enforceable according to their terms (see Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v Worley, 257 AD2d 228, 231 [1st Dept 1999]; Bizfund LLC v Holland & Sliger Steel, LLC, 71 Misc 3d 12226[A] [Sup. Ct. Kings County 2021]).
This instant action arises from a default judgment issued by the Clerk of Kings County Supreme Court on June 28, 2022, pursuant to a Merchant Advance Agreement, wherein Petitioner purchased a percentage of the Respondents' total future accounts receivable up to the sum of $225,600.00 in exchange for an upfront purchase price of $160,000.00.[FN2]
Pursuant to the agreement, the parties included a Choice of Law clause designating New York as the forum pertaining to any disputes regarding the contract, which Respondent signed subjecting him to the personal jurisdiction of the court.[FN3]
In challenging the legitimacy of the Choice of Law clause, the Respondents do not argue that the forum selection clause is unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or argue that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court. Additionally, Section 7 of the agreement states that:

 "The parties further agree to waive personal service of process and to accept mail by electronic mail or by mailing by certified or registered mail, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions."

Petitioner submits an affidavit of service and return receipt indicating that Respondents and Garnishee were served in accordance with the terms of this contract. Additionally, construing the facts in the light most favorable to the Petitioner, non-signatory First Keystone Bank had such a close relationship to the transaction at issue, being the designated bank for the agreement, that it was foreseeable that the forum selection clause would be enforced against it. Accordingly, the court has jurisdiction over this matter and the laws of the state of New York shall govern the determination of this action.

CPLR § 5225(b) provides for an expedited special proceeding by a judgment creditor to recover money or other personal property belonging to a judgment debtor against a person in possession or custody of money or other personal property in which the judgment debtor has an [*5]interest in order to satisfy a judgment (Matter of Rockefeller v Statement Servs., Corp., 204 AD3d 922 [2d Dept. 2022]; quoting Matter of Signature Bank v HSBC Bank USA, N.A., 67 ad3D 917 [2d Dept. 2009]). Pursuant to CPLR § 5227, a special proceeding may be commenced by a judgment creditor against any person who it is shown is or will become indebted to the judgment debtor [Matter of White Plains Plaza Realty, LLC v Cappelli Enters., Inc., 127 AD3d [2d Dept. 2015]). Additionally, Article 52 authorizes a judgment creditor to file a motion against a judgment debtor to compel turnover of assets or, when the property sought is not in the possession of the judgment debtor himself, to commence a special proceeding against a garnishee who holds the assets (see also Cruz v. TD Bank, N.A., 22 NY3d 61, 66 [2013]). With respect to garnishees, CPLR 5225(b) allows a New York court to issue a judgment ordering a party to deliver the property in which the judgment debtor has an interest, or to convert it to money for payment of the debt.
As a matter of law, the opening of a joint account is prima facie evidence of an intention to create a joint tenancy (see Banking Law § 675[b]; Kai Hong Hom v Hom, 101 AD3d 816, 818 [2d Dept 2012]; Matter of Yaros, 90 AD3d 1063 [2d Dept. 2011]). Additionally, the creation of a joint account vests in each tenant a present unconditional property interest in an undivided one half of the money deposited, regardless of who puts the funds on deposit (Matter of Kleinberg v Heller, 38 NY2d 836, 841 [1976]; In re Kohn, 144 AD3d 684 [2d Dept. 2016]; Johnson v Kilpatrick, 233 AD2d 205, 206 [1st Dept. 1996]). Each named tenant is possessed of the whole account so as to make the account vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants (see JRP Old Riverhead, Ltd. v Hudson City Sav. Bank, 106 AD3d 914, 6 [2d Dept. 2013]; Matter of Signature Bank v HSBC Bank USA, N.A., 67 ad3D 917 [2D Dept. 2009]; Tayar v. Tayar, 208 AD2d 609 [2d Dept. 1994]). The statutory presumption created by Banking Law § 675 can be rebutted, however, by providing direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account had been opened for convenience only (Id.; Viggiano v Viggiano, 136 AD2d 630 [2d Dept. 1988]).
The separate entity rule, as it has been employed by New York state courts and federal courts applying New York law, provides that even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes, particularly with respect to CPLR Article 62 prejudgment attachments and Article 52 post judgment restraining notices and turnover orders (see Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts, 269 AD2d 101[1st Dept. 2000]; Therm—X—Chem. & Oil Corp. v. Extebank, 84 AD2d 787 [2d Dept.1981]; Allied Mar., Inc. v Descatrade SA, 620 F.3d 70, 74 [2d Cir. 2010]). In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches.
Where a person other than the judgment debtor has an actual, current interest in the fund or property sought to be garnished, a special proceeding against the garnishee must include that other person as a necessary party (see Swezey v Lynch, 87 AD3d 119 [1st Dept. 2011]; Citibank [South Dakota], N.A. v Island Federal Credit Union, 190 Mis.2d 694 [App. Term 2001]; Ford Motor Credit Co. v Astoria Fed., 189 Misc 2d 475, 478 [NY Dist Ct 2001]). Where a judgment creditor tries to collect against a joint account, only one of whose tenants is a judgment debtor, due process requires that none of the funds in the joint account be disbursed without advising both the judgment debtor and the other tenant of the account (see Lane v Johnson, 283 NY244 [1940]; Mendel v. Chervanyou, 147 Misc 2d 1056 [NY City Civ. Ct. 1990]; Bergdorf Goodman, [*6]Inc. v Mar. Midland Bank, 97 Misc 2d 311, 312 [Civ Ct 1978]; Long Island Jewish Medical Center v. Sovereign Bank, 15 Misc 3d 1041 [Sup Ct. Queens County 2007]). The failure of the petitioner judgment creditor to join the other tenant in the judgment debtor's joint bank accounts as a necessary party warrants dismissal of a special proceeding to require the turnover of all funds in the joint bank accounts since any decision on the merits would necessarily involve a determination of the rights of both joint tenants in the accounts (see New York State Com'r, of Taxation and Fin. v TD Bank, N.A., 55 Misc 3d 395, 400 [Sup Ct Albany County 2016] citing Bergdorf Goodman, Inc. v Marine Midland Bank, 97 Mis.2d 311 [NY City Civ. Ct. 1978]).
With respect to Respondents' contention that the money in the subject joint account belongs to the parties in proportion to their net contributions, that argument is insufficient to rebut the presumption that funds in a joint account are vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants. As an initial note, Respondents have only submitted the affirmation in opposition of their counsel, which is insufficient to rebut the instant motion. Moreover, while Respondent claims that the funds were deposited by his daughter, Kayla McCreary and belong solely to her, Respondent has failed to proffer evidence establishing this. Respondent has not proffered admissible evidence to establish the net portion contributions of each party, and mere conclusory assertions are patently insufficient to rebut ownership of the funds in the bank accounts for purposes of the turnover proceedings. Pursuant to Keystone's Answer to Interrogatories, the joint account that shows Kayla McCreary as a joint accountholder  #XXXXXX0201 was opened on July 9, 2019, and has a balance of $6,689.51. Respondent has not established that the funds belong solely to Kayla McCreary nor that he has disclaimed legal or beneficial ownership over his daughter's account. Furthermore, Pursuant to the Agreement, account #XXXXX7529, which is not the joint account with Kayla McCreary, was designated as the Approved Bank Account for initial daily installments to be withdrawn from and pursuant to the Remittance history, seven withdrawals were made from that account before Respondent defaulted.[FN4]
The record before the court is unclear as to whether Respondent received the Claims Exemption Form and asserted that funds held in the subject accounts were exempt from execution. Nonetheless, Petitioner, only filed affidavits of service on First Keystone Bank in Pennsylvania, Jeffrey McCreary, and Vision Home Builders LLC, but did not serve joint account holders Valerie McCreary and Kayla McCreary, who are necessary parties to this action. Thus, Petitioner must obtain personal jurisdiction over the necessary parties by serving them pursuant to CPLR 308.
Accordingly, it is hereby,
ORDERED, that Petitioner's motion for an order pursuant to CPLR 5225(b) and 5227 directing Garnishee First Keystone Bank to turn over all monies and/or property held by Garnishee is granted to the extent, that Garnishee shall turnover all monies and/or property held in account #XXXXX7529 under Respondents' Vision Home Builders LLC ("Vision") and Jeffrey McCreary only, and it is further,
ORDERED, that that branch of Petitioner's motion directing Garnishee First Keystone Bank to turn over all monies and/or property held in the joint accounts of Respondent Jeffrey McCreary and non-parties Valerie McCreary and Kayla McCreary is denied without prejudice with leave for Petitioner to properly serve the necessary parties in this action, and it is further,
ORDERED, that the stay restraining and enjoining the turnover of any monies and/or property in joint account #XXXXX7529, #XXXXX5401, #XXXXXX5816, #XXXXXX0201, and #XXXXX7906 belonging to Kayla McCreary, Valerie McCreary and/or Jeffrey McCreary shall continue pending a final determination of this action.
This constitutes the decision and order of the court.
Hon. Ingrid Joseph J.S.C.

Footnotes

Footnote 1:In order to assert such defenses, Respondents' must plead it affirmatively in their answer pursuant to CPLR 3018(b) or in a pre-answer motion to dismiss pursuant to CPLR 3211(a). The failure to plead such defense is a waiver.

Footnote 2:See #514214/2022 NYSCEF Doc. No. 2.

Footnote 3:"Section 7  Governing Law and Jurisdiction" of the agreement states in relevant part that "Guarantor acknowledges and agrees that the Purchase Price is being paid and received by Seller in New York, that the Specified Percentage of the Future Receipts are being delivered to Buyer in New York, and that the transaction contemplated in this Guaranty was negotiated, and is being carried out, in New York. Guarantor acknowledges and agrees that it is guaranteeing a New York agreement and transaction. Guarantor acknowledges and agrees that New York has a reasonable relationship to this transaction." 

Footnote 4:See #514214/2022 NYSCEF Doc. Nos. 2-3.