[857 NYS2d 62]

FREEFORD LIMITED, Respondent, v LANE P. PENDLETON et al., Appellants, et al., Defendants.

First Department, April 10, 2008

## APPEARANCES OF COUNSEL

*Hoguet Newman Regal & Kenney, LLP*, New York City (*John J. Kenney, Tai-Heng Cheng* and *Juan A. Skirrow* of counsel), and *Bondurant, Mixson & Elmore*, Atlanta, Georgia (*Steven J. Rosenwasser* of counsel), for Lane P. Pendleton, appellant.

*Hangley Aronchick Segal & Pudlin*, Philadelphia, Pennsylvania (*Zachary R. Davis* of counsel), and *Debevoise & Plimpton LLP*, New York City (*Robert H. Chandler* of counsel), for Kirk Pendleton and others, appellants.

*LeBoeuf, Lamb, Greene & MacRae, LLP*, New York City (*John G. Nicolich* and *Jaime M. Jackson* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

The underlying action for, inter alia, fraud and breach of contractual obligations and fiduciary duties arises out of a series of agreements between the plaintiff and a stupefying array of corporate entities and individual, but related, participants. The agreements made between 2000 and 2003 relate to the structure and financing of Orient Network Holdings Ltd. (hereinafter referred to as Orient Holdings), a Cayman Islands corporation, with its principal place of business in Singapore. The plaintiff Freeford Limited (hereinafter referred to as Freeford) is an investment company whose sole director at all relevant times was Karim Karaman, a London resident. Between 2000 and 2003 Freeford made substantial investments totaling $4.75 million in Orient Holdings.

The defendant corporate entities are collectively known as the Cairnwood entities. The defendant Lane P. Pendleton controls or has interests in defendants Cairnwood Capital Management, LLC (hereinafter referred to as Cairnwood Management), Cairnwood Capital Partners, LLC (hereinafter referred to as Cairnwood Partners), Cairnwood Capital Interna-

tional, Ltd. (hereinafter referred to as Cairnwood International), and Cairnwood Group, LLC (hereinafter referred to as Cairnwood Group), as well as other Cairnwood entities. Cairnwood entities owned substantial shares of Orient Holdings. At all times, Lane Pendleton was co-chairman and executive director of Orient Holdings, which he controlled through Cairnwood entities and as Cairnwood International's CEO and managing director.

Defendant Kirk Pendleton was the chief executive and chairman of Cairnwood, Inc., and held interests in various Cairnwood entities. Defendant Laird Pendleton held interests in various Cairnwood entities, and was a principal of Cairnwood Group. Both individual defendants were involved in the business affairs of Orient Holdings.

At the crux of this appeal on the issue of personal jurisdiction are five separate agreements, all of which include a forum selection clause binding the parties to the jurisdiction of New York courts. In October 2000, Freeford made a $1 million investment in Orient Holdings pursuant to "the 2000 Stock Purchase Agreement." The parties to the 2000 Stock Purchase Agreement were Orient Holdings and approximately 20 investors, including Freeford. None of the defendants were parties to that agreement.

In January 2002, Freeford entered into the 2002 Shareholders Agreement wherein it consented to the conversion into class B preferred shares of a $1 million promissory note it was holding as a result of an additional $1 million loan it made to Orient Holdings in September 2001. The parties to this agreement, among others, were Orient Holdings, a new investor Newco also known by the name of Alexandrite International Finance Ltd. (Alexandrite) and certain existing investors that included Freeford and defendants-appellants Cairnwood Partners and Cairnwood Group. None of the other defendants were parties to this agreement although Lane Pendleton signed in his representative capacity for various Cairnwood entities.

The purpose of the 2002 Shareholders Agreement was to set forth how Orient Holdings would be managed, and to delineate the rights and duties of the shareholders of Orient Holdings. The 2002 Shareholders Agreement included the following clauses:

> "(D) Pursuant to a Share Purchase Agreement to be entered into today, [Alexandrite] will subscribe

for the issue of B Preferred Shares. *Various Existing Investors will also be converting existing Convertible Promissory Notes into B Preferred Shares. . . .*

"(G) The Founders and the Existing Investors have agreed to replace the Former Shareholders' Agreements in their entirety with the provisions as set out in the Agreement and to *enter into this Agreement as an inducement to the investment by [Alexandrite] in the Company.*" (Emphasis added.)

On the same day, Lane Pendleton and Cairnwood Management, as well as Orient Holdings and Alexandrite, entered into the 2002 Stock Purchase Agreement pursuant to which Alexandrite invested approximately $7.5 million in Orient Holdings for approximately four million class B preferred shares. This agreement also referred to the contemporaneous conversion of a number of promissory notes held by existing investors including Freeford. Moreover, the agreement plainly contemplated the delivery of the conversion notices to Alexandrite at closing as a condition of the deal. A number of provisions in the agreement indicate that the parties incorporated the 2002 Shareholders Agreement into the 2002 Stock Purchase Agreement.

In 2003, on the basis of further numerous written and oral communications between Freeford and Lane Pendleton, Freeford entered into "the 2003 Stock Purchase Agreement" and "the 2003 Shareholders Agreement." The parties to the 2003 Stock Purchase Agreement included Freeford, Orient Holdings, and a Cairnwood entity controlled by Lane Pendleton called Newfirst Limited. The parties to the 2003 Shareholders Agreement include Freeford, Orient Holdings, Cairnwood Partners and Cairnwood Group, and several other Cairnwood entities, including Newfirst Limited. Lane Pendleton did not sign either agreement in his personal capacity.

In effect, of the five agreements containing forum selection clauses subjecting the parties to jurisdiction in the courts of New York, Freeford signed four. Cairnwood Partners and Cairnwood Group signed both the 2002 Shareholders Agreement and the 2003 Shareholders Agreement. Lane Pendleton and Cairnwood Management each signed one, the 2002 Stock Purchase Agreement, which was the only agreement to which Freeford was not a party. Cairnwood International, Kirk Pendleton and Laird Pendleton did not sign any of the five agreements.

Subsequently, Freeford commenced an action against the defendants alleging fraudulent inducement to purchase securi-

ties and to loan money to the now insolvent Orient Holdings, breach of contract and breach of fiduciary duty. The complaint alleges that these wrongs arise out of the various agreements described above. The defendants did not argue the validity of the causes of actions but moved to dismiss Freeford's complaint pursuant to CPLR 3211 (a) on the grounds of lack of personal jurisdiction, the "first filed" rule,[1] and forum non conveniens.

The court denied the motion on the basis that it found personal jurisdiction with respect to all seven of the defendants under the choice of forum provisions of General Obligations Law § 5-1402.

For the reasons set forth below, we modify. As a threshold matter, since none of the parties reside in New York and none of the alleged conduct took place in New York, it is undisputed that there is no other basis to extend jurisdiction over this action other than through enforcement of one or more of the forum selection clauses. Section 5-1402 provides for enforcement of forum selection clauses found in contracts worth not less than $1 million, even among foreign parties, but only if the parties submit to jurisdiction in New York. Specifically, section 5-1402 (1) provides:

> "[A]ny person may maintain an action or proceeding against a . . . non-resident . . . where the action or proceeding arises out of or relates to any contract . . . covering in the aggregate, not less than one million dollars, and . . . which contains a provision or provisions whereby such . . . non-resident agrees to submit to the jurisdiction of the courts of this state."

The motion court therefore correctly found that jurisdiction exists over Cairnwood Partners and Cairnwood Group under General Obligations Law § 5-1402 because they were parties to the 2002 Shareholders Agreement to which Freeford was also a party. Since the forum selection clause in that agreement extends to any controversy "arising out of or relating to this Agreement" the court properly found that it covered the allegations in this case.

Jurisdiction over the remaining defendants is more problematic. The motion court held that the 2002 Shareholders Agree-

1. Freeford commenced a separate action in Singapore against Lane Pendleton, Newfirst Limited, and Cairnwood International prior to the action in New York.

ment and the 2002 Stock Purchase Agreement should be treated as one. The court employed this conclusion for further holding that Lane Pendleton and Cairnwood Management (signatories to the 2002 Stock Purchase Agreement) consented to the forum selection clause contained in the 2002 Shareholders Agreement, an agreement that neither Lane Pendleton nor Cairnwood Management signed. Alternatively, the court held that the forum selection clause contained in the 2002 Shareholders Agreement binds Lane Pendleton and Cairnwood Management because of their close relationships to Cairnwood Partners and Cairnwood Group, both of which are parties to the 2002 Shareholders Agreement.

Furthermore, the motion court found that it also had jurisdiction over Kirk Pendleton and Laird Pendleton, because they were closely related to the parties[2] such that it was foreseeable that they would be bound by the forum selection clause. Finally, the court determined that it had jurisdiction over Cairnwood International because it was an aider and abetter of the actions of the other defendants.

On appeal, Laird Pendleton, Kirk Pendleton and Cairnwood International correctly argue that there is no basis for jurisdiction over them because they did not sign *any* agreement containing a forum selection clause consenting to jurisdiction in the courts of New York, nor were they "closely related" to any party involved in the action. Laird Pendleton, Kirk Pendleton and Cairnwood International also correctly argue that in light of the fact that no conspiracy is alleged in the complaint, there is no possible way that they were "co-conspirators" and thus bound by any of the forum selection clauses agreed to by the other defendants in the case.

Lastly, Lane Pendleton and Cairnwood Management argue that there was no consent to jurisdiction in New York simply because the 2002 Shareholders Agreement is incorporated by reference in the 2002 Stock Purchase Agreement. Lane Pendleton asserts that the agreements had different purposes and different parties, and that the forum selection clauses are independent and cannot be conflated.

The question raised at oral argument on this appeal, and subsequently briefed by the plaintiff and the defendants, is

---

2. The court refers to Kirk Pendleton's relationship with Cairnwood, Inc. but Cairnwood, Inc. did not sign any the agreements involved in this case nor was it named as a defendant in the action.

whether Freeford was made a party to the 2002 Stock Purchase Agreement by virtue of the incorporation so as to afford it the benefit of the forum selection clause.

In their supplemental briefs, Lane Pendleton and Cairnwood Management argue that incorporation provisions do not create privity of contract between parties to separate agreements. Lane Pendleton asserts that since there is no agreement with a New York forum selection clause to which both he and Freeford are parties, Freeford may not enforce the forum selection clause as a nonparty.

Freeford argues that by executing the 2002 Stock Purchase Agreement which incorporated the 2002 Shareholders Agreement, Lane Pendleton and Cairnwood Management consented to the jurisdiction of the New York courts for any suit relating to 2002 Shareholders Agreement. Freeford also argues in its supplemental brief that the dealings and relationships between Lane Pendleton and Freeford were so closely related that they "approach privity" and so Freeford has the right to enforce the forum selection provisions against Lane Pendleton.

The defendants correctly submit that generally only parties in privity of contract may enforce terms of the contract such as a forum selection clause found within the agreement. (*ComJet Aviation Mgt. v Aviation Invs. Holdings*, 303 AD2d 272 [1st Dept 2003].) The defendants are also correct that incorporation by reference does not per se establish privity between the parties to both contracts. (*But see Greene's Ready Mixed Concrete Co. v Fillmore Pac. Assoc. Ltd. Partnership*, 808 F Supp 307 [SD NY 1992] [promissory notes, security agreement and subscription designated New York as the forum state but the guaranties did not: nevertheless guaranties subjected guarantors to jurisdiction in New York because guaranties referred to the contract wherein New York forum selection clause appeared].) In any event, the defendants' reliance on *United States Steel Corp. v Turner Constr. Co.* (560 F Supp 871 [SD NY 1983]) is inapposite here. In that case, the issue was whether the plaintiff, a party to a subcontract that was incorporated by reference into the primary contract, was bound by a clause in the primary contract to which it was not a party. Here, the issue is whether a nonparty Freeford can bind Lane Pendleton and Cairnwood Management to the forum selection clause found in the subsidiary 2002 Stock Purchase Agreement rather than the primary 2002 Shareholders Agreement.

We find that there are three sets of circumstances under which a nonparty may invoke a forum selection clause: First, it

is well settled that an entity or individual that is a third-party beneficiary of the agreement may enforce a forum selection clause found within the agreement. (*See ComJet Aviation Mgt.*, 303 AD2d at 272.) Second, parties to a "global transaction" who are not signatories to a specific agreement within that transaction may nonetheless benefit from a forum selection clause contained in such agreement if the agreements are executed at the same time, by the same parties or for the same purpose. (*See PT. Bank Mizuho Indonesia v PT. Indah Kiat Pulp & Paper Corp.*, 25 AD3d 470, 471 [1st Dept 2006].) Third, a nonparty that is "closely related" to one of the signatories can enforce a forum selection clause. (*See ComJet Aviation Mgt.*, 303 AD2d at 273; *Direct Mail Prod. Servs. Ltd. v MBNA Corp.*, 2000 WL 1277597, 2000 US Dist LEXIS 12945 [SD NY 2000].) The relationship between the nonparty and the signatory in such cases must be sufficiently close so that enforcement of the clause is foreseeable by virtue of the relationship between them.

In this case, we find that the plaintiff does not qualify as a third-party beneficiary. At most, the plaintiff, as an existing investor, might be an incidental beneficiary who presumably would gain a pecuniary benefit from the additional investment in the corporation pursuant to the 2002 Stock Purchase Agreement. However, there is no clear intention to confer the benefit of the promised performance on Freeford itself. (*See State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling*, 95 NY2d 427, 434-436 [2000].) Certainly, Freeford cannot establish that the benefit to it is "sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." (*Id.* at 434-435; *see also Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 43-46 [1985].)

We find, however, that the plaintiff may invoke the forum selection clause of the 2002 Stock Purchase Agreement on the grounds of the two agreements being part of a "global transaction." In *PT. Bank Mizuho Indonesia* (25 AD3d at 471) we stated, "[o]ccasionally, parties to a global transaction who are not signatories to a specific agreement within that transaction may nonetheless benefit from a selection clause contained in such agreement." We decline to hold that a "global transaction" necessarily requires the absolute identity of all signatories to the individual component agreements. Here, the agreements were executed on the same day and were essentially executed for the same purpose: to secure financing for Orient Holdings.

The 2002 Shareholders Agreement and the 2002 Stock Purchase Agreement were parts of a single business transaction. The explicit language in the 2002 Shareholders Agreement stating that the existing investors are entering into the agreement as an "inducement" for Alexandrite's investment taken together with the language of the 2002 Stock Purchase Agreement where the conversion notices are to be delivered to Alexandrite as a condition of closing makes it clear that the two agreements qualify as parts of a "global transaction." Additionally, Lane Pendleton states in his brief that the purpose of the 2002 Stock Purchase Agreement was to effectuate financing through four million plus shares at $1.41 per share by Alexandrite and "to set forth that holders of promissory notes not parties thereto would convert their notes to shares pursuant to other agreements."

Moreover, we find that Freeford may invoke the forum selection clause found in the 2002 Stock Purchase Agreement by virtue of its close relationship with Lane Pendleton and Cairnwood Management, both signatories to the 2002 Stock Purchase Agreement. It is well established that a nonsignatory may invoke a forum selection clause if the relationship between the nonparty and the signatory is sufficiently close so that the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the nonparty and the party sought to be bound. (*See Direct Mail Prod. Servs. Ltd.*, 2000 WL 1277597 at *3-5, 2000 US Dist LEXIS 12945 at *7-14; *see also Dogmoch Intl. Corp. v Dresdner Bank*, 304 AD2d 396, 397 [1st Dept 2003].) "In discerning whether parties are 'closely related,' the U.S. Court of Appeals for the Second Circuit has looked to whether the non-signatory ' [is an] intended beneficiar[y] entitled to enforce' the clause in question" (*Direct Mail Prod. Servs. Ltd.*, 2000 WL 1277597 at *3, 2000 US Dist LEXIS 12945 at *8-9, quoting *Roby v Corporation of Lloyd's*, 996 F2d 1353, 1358 [2d Cir 1993], *cert denied* 510 US 945 [1993]). However, third-party beneficiary status is not required. (*See Nanopierce Tech., Inc. v Southridge Capital Mgt. LLC*, 2003 WL 22882137, *5, 2003 US Dist LEXIS 21858, *17 [SD NY 2003] ["(w)hile it may be true that third-party beneficiaries to a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required" (citation omitted)].)

Even a cursory examination of these two agreements makes clear that Lane Pendleton and Cairnwood Management had

every reason to foresee that Freeford would seek to enforce the forum selection clause against them. Freeford's involvement in the 2002 Stock Purchase Agreement was hardly peripheral, particularly in light of Freeford's agreement to execute a conversion notice as an inducement for Alexandrite to enter the contract.

Finally, the court properly declined to dismiss on forum non conveniens grounds, inasmuch as the action concerns a contract to which General Obligations Law § 5-1402 applied. (*See National Union Fire Ins. Co. of Pittsburgh, Pa. v Worley*, 257 AD2d 228, 230-231 [1st Dept 1999].)

The defendants' claim that the action must be dismissed on the grounds of a prior action pending was not raised in their briefs and is thus deemed abandoned. We have considered the defendants' remaining arguments and find them without merit.

Accordingly, order, Supreme Court, New York County (Helen E. Freedman, J.), entered on or about July 10, 2006, which denied the defendants' motion to dismiss for lack of personal jurisdiction, prior action pending and forum non conveniens, should be modified, on the law, to the extent of granting the motion to dismiss as to defendants-appellants Kirk Pendleton, Laird Pendleton, and Cairnwood Capital International for lack of personal jurisdiction, and otherwise affirmed, without costs.

Motions seeking leave to file supplemental brief and leave to file responsive supplemental brief granted.

Andrias, J.P., McGuire and Malone, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 10, 2006, modified, on the law, to the extent of granting the motion to dismiss as to defendants-appellants Kirk Pendleton, Laird Pendleton, and Cairnwood Capital International for lack of personal jurisdiction, and otherwise affirmed, without costs. Motions seeking leave to file supplemental brief and leave to file responsive supplemental brief granted.