Aerogen LLC v Tapjets Holdings Inc. (2024 NY Slip Op 51341(U))

[*1]

Aerogen LLC v Tapjets Holdings Inc.

2024 NY Slip Op 51341(U)

Decided on September 27, 2024

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 27, 2024
Supreme Court, New York County

Aerogen LLC, STARSHIP 1 LLC, Plaintiffs,

against
Tapjets Holdings Inc., TAPJETS INC., TAPJETS TECHNOLOGIES INC., EUGENE KESSELMAN, MARIA TSENAEVA-KESSELMAN, Defendants.

Index No. 652472/2024

Counsel for Plaintiffs: Amanda H. Freyre, Esq., and Dania Slim, Esq., of PILLSBURY WINTHROP SHAW PITTMAN, LLP
Counsel for Defendants: Stuart J. Moskovitz, Esq., of LAW OFFICES OF STUART J MOSKOVITZ

Anar Rathod Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 65—75, 91 were read on this motion to/for DISMISSAL.
Defendants Tapjets Holdings Inc., Tapjets Inc., Tapjets Technologies Inc., Eugene Kesselman, and Maria Tsenaeva-Kesselman (collectively "Defendants") move to dismiss Plaintiffs Aerogen LLC and Starship 1 LLC's (collectively "Plaintiffs") claims for (i) access and delivery of Starship's books and records against Eugene Kesselman ("Kesselman") and Tapjets Holdings Inc., Tapjets Inc., and Tapjets Technologies Inc. (collectively "Tapjets"); (ii) breach of representation and warranties against Tapjets; (iii) breach of contract against Tapjets; (iv) fraudulent misrepresentation against Kesselman; (v) negligent misrepresentation against Tsenaeva-Kesselman ("Tsenaeva-Kesselman"); and (vi) declaratory judgment against Defendants pursuant to CPLR §§ 3211(a)(2), (4), (8), and (9). Relevant Factual and Procedural History fnref="1">
 The facts are taken from the Complaint and the exhibits thereto and, for the purposes of this motion, are accepted as true. The Court further refers to and incorporates the relevant factual and procedural history as set forth in its Decisions and Orders on Motion 3 (NYSCEF Doc. No. 127) and 5 (NYSCEF Doc. No. 125).
Plaintiff Aerogen LLC ("Aerogen") is a Delaware limited liability company, with its registered office in Delaware. NYSCEF Doc. No. 68 at ¶ 13 (Pl.'s Summons and Compl.). Plaintiff Starship 1 LLC ("Starship") is a Delaware limited liability company, with its principal place of business—at the time of Plaintiff Aerogen's acquisition—in Texas, and its current principal place of business in the United Kingdom. Id. at ¶ 14. Non-party Peter Constantine Markos Nomikos ("Nomikos"), a natural person and resident of the United Kingdom, is the sole [*2]managing member of both Plaintiffs Aerogen and Starship. Id.
Defendant Tapjets Holdings Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Florida. Id. at ¶ 15. The Complaint alleges that Defendant Tapjets Holdings Inc. maintains additional offices and does business in California, Illinois, New York, and Texas. Id. The Tapjets Holdings Inc. website identifies its address as 575 Fifth Avenue, New York, New York 10017. Id.
Defendant Tapjets Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Florida. Id. at ¶ 16.
Defendant Tapjets Technologies Inc. is a corporation organized and existing under Delaware, with its principal place of business in Florida. Id. at ¶ 17.
Defendant Kesselman, a natural person and resident of Texas and Florida, is the founder and CEO of Tapjets. Id. at ¶ 18. Defendant Tsenaeva-Kesselman, a natural person and resident of Texas and Florida, is an executive officer of Tapjets Holdings Inc. and the COO of Tapjets, Inc. Id. at ¶ 19.
This matter arises from the parties' relative relationships pertaining to a pair of aircraft located in Florida. Id. at ¶ 1. There are seven relevant agreements signed by the parties in relation to the aircraft from June 19, 2019, to October 4, 2023. See NYSCEF Doc Nos. 2—8; see also Addendum A (Summary of Agreements) annexed hereto. 
Management Agreements
On June 19, 2019, Kesselman formed Starship with Tapjets as its sole member. NYSCEF Doc. No. 68 at ¶ 23. On the same date, Starship and Tapjets entered into an aircraft purchase and management agreement as to a Bombardier aircraft ("Bombardier Management Agreement") whereby Starship purchased the aircraft and Tapjets agreed, inter alia, to maintain the aircraft in airworthy condition and maintain all records in accordance with Federal Aviation Regulations (FAR). Id. at ¶¶ 24, 25; NYSCEF Doc. No. 2 (Management Agreement dated June 19, 2019 (Bombardier Aircraft)). On or about October 18, 2021, Starship purchased a second Cirrus aircraft pursuant to a separate aircraft purchase and management agreement ("Cirrus Management Agreement"). NYSCEF Doc. No. 68 at ¶ 28; NYSCEF Doc. No. 3 (Management Agreement dated June 19, 2019 (Cirrus Aircraft)). As to both purchases, Starship procured loans from a third-party lender (the "Original Lender"). NYSCEF Doc. No. 68 at ¶¶ 26, 29. 
On July 12, 2023, the Original Lender transferred and assigned his claims, rights, and obligations to and against Starship and Tapjets to Nomikos, who, in turn, assigned the same to Aerogen. Id. at ¶ 30. Both Management Agreements contain identical provisions stating that the respective agreement "shall be governed and construed in accordance with the laws of the State of Texas or Florida," and that any proceeding arising from the agreements "may be instituted in any state or federal court in the State of Texas." NYSCEF Doc. Nos. 2, 3.
Loan and Aircraft Security Agreements
During the period of August 2023 through September 2023, Aerogen engaged in negotiations with Tapjets and Kesselman regarding the transfer of Tapjets' membership interests in Starship to Aerogen. Id. at ¶ 31. During those negotiations, Plaintiffs allege that Kesselman made representations that Starship had no liabilities, that he would provide current financial statements for Starship, and—later—that Starship owed $2,003,287.92 to Tapjets, including for costs to maintain and operate the aircraft and that said amount could be partially offset to [*3]$1,269,843.52. Id. at ¶¶ 31—34. Beginning on September 10, 2023, Kesselman began demanding payment of the $1,269,843.52. Id. at ¶ 35. 
Facing this pressure, Aerogen agreed to pay $1 million toward Starship's alleged liabilities to Tapjets, in reliance on Kesselman's representations that the alleged liabilities were valid and outstanding liabilities incurred because of the operation and maintenance of the Aircraft, that Starship owned assets with a value at approximately $5 million, and that the parties would subsequently conduct a closer analysis and reconciliation of all amounts actually owed to Tapjets, if any.
Id. at ¶ 36. Aerogen remitted a payment of $1 million to Tapjets on behalf of Starship on September 25, 2023. Id. at ¶ 42.
On September 24, 2023, Kesselman, in his capacity as Manager for Starship, and Nomikos, on behalf of Aerogen, executed two Loan and Aircraft Security Agreements ("LSAs") relating to the previous loans made to Starship for the purchase of the aircraft. Id. at ¶ 37; see also NYSCEF Doc. Nos. 4 (LSA dated September 24, 2023 (Bombardier Aircraft), 5 (LSA dated September 24, 2023 (Cirrus Aircraft). Pursuant to the LSAs, the parties agreed that any proceeding arising from the LSAs or any other related loan documents "may be instituted or brought in the courts of the State of New York or" in the Southern District of New York, and that the LSAs are governed by New York Law. Id. 
Loan Note
On September 25, 2023, Aerogen as "Lender", Nomikos as "Assignor", and Starship as "Debtor" (wholly owned by Tapjets and controlled by Kesselman) executed a loan note, effective as of June 19, 2019, "to properly document the loans [used to fund services under the Management Agreements], including $1 million paid by Aerogen (on behalf of Starship) toward Starship's alleged liabilities" ("Loan Note"). NYSCEF Doc. No. 68 at ¶ 45; NYSCEF Doc. No. 6 (Loan Note dated September 25, 2023). The Loan Note specifies that the proceeds of the loans, totaling $4,891,770.68, were intended for and used by Starship to operate and maintain the aircraft. NYSCEF Doc. No. 6 at 1. The parties agreed that any proceeding arising from and related to the Loan Note shall be governed by New York law and subject to the exclusive jurisdiction of New York courts. Id. at 7. 
Release Letter Agreement
On the same date, Kesselman (on behalf of Tapjets, the sole member of Starship) executed a letter addressed to Starship, Aerogen, and Nomikos stating, inter alia, that Tapjets and Kesselman used the proceeds from the loans in the aggregate amount of $4,891,770.68 to make payments for and on behalf of Starship. NYSCEF Doc. No. 68 at ¶¶ 54, 55. The Letter Agreement states that any proceeding arising from the letter shall be governed by New York law and subject to the exclusive jurisdiction of New York courts. Id. at ¶ 59. 
Membership Interest Purchase and Sale Agreement
On October 4, 2023, Aerogen purchased all membership interests in Starship from Tapjets pursuant to the Membership Interest Purchase and Sale Agreement ("MIPSA"). Id. at 61. Pursuant to the MIPSA, Tapjets made representations and warranties—many of which form the basis of Plaintiff's Complaint—including, for example, those related to providing the books and records as well as financial statements of Starship, the condition of the aircraft, the existence of insurance policies, and the accuracy and completeness of due diligence materials. Id. at ¶ 62; NYSCEF Doc. No. 8 (MIPSA, dated October 4, 2023). The parties agreed that any proceeding arising from the MIPSA shall be governed by New York law. NYSCEF Doc. No. 68 at ¶ 65. [*4]On October 11, 2023, Aerogen closed on its acquisition of Starship's membership interests from Tapjets. Id. at ¶ 61.
Events Post-Closing
Plaintiffs allege that post-closing, they became aware of material misrepresentations and breaches perpetrated by Kesselman. Plaintiffs allege that Kesselman misrepresented the location of the aircraft. Id. at ¶ 70. Upon engaging a third party to conduct a visual inspection of the aircraft, Plaintiffs became aware of significant corrosion to the Bombardier aircraft. Id. at ¶ 71. Plaintiff also became aware that Tapjets failed to perform routine maintenance on the aircraft and failed to remit $60,000 to a third-party service provider. Id. at ¶ 72. Additionally—and as conceded by Tapjets during a September 12 appearance before the Court—Tapjets has not provided the complete and original books and records of Starship as well as financial statements. Id. at ¶ 73, 75; see also NYSCEF Doc. No. 139 at 11—12 (9/12/24 Tr.). Ultimately, Plaintiffs allege that, contrary to Kesselman's representations, the aircraft are not in airworthy condition, in violation of the MIPSA at Sections 5(c)(vii) and 5(t). NYSCEF Doc. No. 68 at ¶ 74.
Accordingly, Plaintiffs bring the present suit seeking to recover based upon: (1) "Defendant Tapjets' failure to manage and maintain a Bombardier turbo-fan jet aircraft and a Cirrus Design Corp. propellor aircraft under management agreements between Tapjets and Starship;" (2) breach of the "loan agreements under which Plaintiff Aerogen and a third party lender advanced millions of dollars to cover all alleged expenses to operate and maintain the aircraft under the management agreements;" and (3) "Defendants' misrepresentations and Tapjets' breaches of warranty arising from the purchase of all issued and outstanding membership interests in Starship, the owner of the two aircraft." Id. at ¶ 1.
Plaintiffs commenced this action by the filing of the Summons and Complaint on May 13, 2024. Id. However, two days prior, Defendant Kesselman filed a complaint against Plaintiff Starship 1 LLC (hereinafter "Starship") pro se in the Eleventh Judicial Circuit of Florida (hereinafter "Florida Action"). NYSCEF Doc. 105 at ¶ 6 (Aff. of Amanda H. Freyre, Esq.). On May 17, 2024, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1446 to remove the case from this Court to the United States District Court for the Southern District of New York. NYSCEF Doc. No. 32 (Notice of Removal). On May 28, 2024, the Honorable Lorna G. Schofield remanded the matter back to this Court. NYSCEF Doc. No. 40 (Notice of Remand).
The parties appeared for a Preliminary Conference before this Court on July 12, 2024, at which time the Court granted Plaintiffs' limited TRO by ordering Defendants to deliver copies of all books and records of Starship to Plaintiffs, and enjoined Kesselman from disclosing the name of the Original Lender referenced in the Complaint. NYSCEF Doc. No. 121 at 8—9 (7/12/24 Tr.). 
Defendants filed the instant Motion to Dismiss the Complaint pursuant to CPLR §§ 3211(a)(2), (4), (8), and (9). NYSCEF Doc. Nos. 65—75. As reflected in the above summary of facts and Addendum A, the interrelated agreements contain conflicting choice of law/venue provisions, and the parties dispute which agreement/provision is controlling in this matter. See NYSCEF Doc Nos. 2—8. Defendants argue that this Court does not have jurisdiction over the matter because: (1) there is no personal jurisdiction over each of the Defendants; (2) there is no subject matter jurisdiction over this action; (3) this matter is already being litigated in the Florida Action; and (4) pursuant to the doctrine of forum non conveniens, the matter should be permitted to proceed in Florida state court. NYSCEF Doc. No. 75 at 1. (Defs. Mot. to Dismiss.) 
As related to the Florida action, on July 17, 2024, the parties appeared before Judge Valerie R. Manno Schurr for a hearing on Starship's motion to dismiss the complaint, or in the alternative, to stay the action pending resolution of the action before this Court. NYSCEF Doc. No. 124 (Florida Action Order and Decision). On August 4, 2024, Judge Schurr granted Starship's motion to stay the Florida Action pending resolution of, and final judgment entered in, the action before this Court. Id.
Legal Discussion
Personal Jurisdiction (CPLR § 3211(a)(8))
CPLR § 3211(a)(8) states, in relevant part, "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . (8) the court has not jurisdiction of the person of the defendant . . . ." "[W]e have explained that the 'constitutional predicates of personal jurisdiction' contain two components. The first 'component involves service of process, which implicates due process requirements of notice and opportunity to be heard. The other component of personal jurisdiction involves the power, or reach, of a court over a party, so as to enforce judicial decrees.'" Aybar v. Aybar, 177 N.E.3d 1257, 1264 (NY 2021) (quoting Keane v. Kamin, 723 N.E.2d 553 (NY 1999)). "To satisfy the jurisdictional basis there must be a constitutionally adequate connection between the defendant, the State and the action." Keane v. Kamin, 723 N.E.2d 553, 555 (NY 1999). 
The first component of personal jurisdiction, service of process, was previously decided by this Court in Motion Sequence 5. See NYSCEF Doc. No. 125. The Court determined that Plaintiffs demonstrated the impracticability of traditional methods of service by demonstrating that Plaintiffs had repeatedly attempted service upon Defendants Kesselman and Tsenaeva-Kesselman at two residential addresses, two business addresses, and at the Eleventh Judicial Circuit of Florida's Courthouse, but were unable to effectuate service. Id. at 3. Accordingly, the Court granted alternative service via the active business email addresses of Defendants Kesselman and Tsenaeva-Kesselman and the email address of their attorney. Id. at 4—5. The Court also acknowledged that granting alternative service only affects the issue of due process, "and does not necessarily waive objections as to jurisdiction and venue." Id. at 4. The Court now looks to the second component of personal jurisdiction. Aybar, 177 N.E.3d at 1264.
"[T]here are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.' For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 n. 14 (1985) (internal citations omitted). Courts will enforce valid forum selection clauses and choice of law provisions. Boss v. Am. Exp. Fin. Advisors, Inc., 791 N.Y.S.2d 12 (1st Dept. 2005), aff'd sub nom. Boss v. Am. Express Fin. Advisors, Inc., 844 N.E.2d 1142 (NY 2006).
The present action arises out of seven interrelated agreements as discussed supra with conflicting choice of law and venue provisions. Plaintiffs allege in the Complaint and Opposition that jurisdiction and venue is proper in this Court because: (1) the forum selection clauses in the agreements confer personal jurisdiction on this Court; and (2) the Florida courts do not have personal jurisdiction over Plaintiff Starship. NYSCEF Doc. No. 91 (Pl. Mem. of Law) at 11—16. Preliminarily, Plaintiffs' latter argument is rendered academic as Plaintiff's motion to dismiss in the Florida Action has been stayed. NYSCEF Doc. No. 124. Defendants contend that personal jurisdiction cannot extend to any or all the Defendants that were non-signatories to the relevant agreements. NYSCEF Doc. No. 75 (Defs. Mem. of Law) at 16.
The Management Agreements, executed in 2019, designate Texas or Florida law as controlling and Texas as the proper venue. NYSCEF Doc No. 2 at §§ 13.1, 13.7; NYSCEF Doc. No. 3 at §§ 13.1, 13.7. However, the Loan and Aircraft Security Agreements, executed in 2023, state that the Debtor (Tapjets) consents and agrees to New York law as controlling, the jurisdiction of New York Courts, and New York as a proper venue.[FN2]
NYSCEF Doc. No. 4 at §§ 8.6, 8.7; NYSCEF Doc. No. 5 at §§ 8.6, 8.7. Simultaneously, the Loan Note, Release Letter Agreement and MIPSA, also signed in 2023, designate New York law as controlling and identify New York Courts as having exclusive jurisdiction. NYSCEF Doc. No. 6 at §§ 9.1, 9.2; NYSCEF Doc. No. 7 at 3; NYSCEF Doc. No. 8 at § 11(e).[FN3]
 
"It is a general principle that only the parties to a contract are bound by its terms. A non-signatory may be bound by a contract under certain limited circumstances, including as a third-party beneficiary or an alter ego of a signatory or where it is a party to another related agreement that forms part of the same transaction." Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd., 184 AD3d 116, 121—22 (1st Dept. 2020) (internal citations omitted). When extending the terms of a contract to confer personal jurisdiction upon a non-signatory, "[t]he relationship between the nonparty and the signatory in such cases must be sufficiently close so that enforcement of the clause is foreseeable by virtue of the relationship between them." Freeford Ltd. V. Pendleton, 53 AD3d 32, 39 (1st Dept. 2008). Further, a contract containing a forum selection clause and defining the bound parties to include related entities should be upheld by the Court. Oberon Sec., LLC v. Titanic Ent. Holdings LLC, 153 N.Y.S.3d 838 (1st Dept. 2021) (holding that a forum selection clause which defined the bound parties to include defendant's "affiliates, subsidiaries, and subsequently formed entities," was sufficient to confer jurisdiction on defendant's related corporate entities).
The Release Letter Agreement was signed by Kesselman concurrent with the Loan Note and acknowledges the receipt of the loan proceeds. NYSCEF Doc. Nos. 6, 7. The Release Letter Agreement was written on Defendant Tapjets Holdings' letterhead and signed by Defendant Kesselman in his role as the CEO of Defendant Tapjets Holdings. NYSCEF Doc. No. 7. Because forum selection clauses can confer personal jurisdiction over the parties to the agreement, New York courts can exercise personal jurisdiction over Defendant Tapjets Holdings. The Release Letter further provides that the letter is sent on behalf of and applies to "Tapjets Parties," which the letter defines as "TJH [Tapjets Holdings] and any of its Affiliates, officers, directors, employees and any person connected to TJH including TJ [Tapjets] and any of TJH's Affiliates." Id. Considering this provision, and that Defendant Tapjets Holdings was [*5]the 100% owner of Defendant Tapjets, it is reasonable to conclude that "the enforcement of the clause is foreseeable" to other Tapjets entities, including Defendant Tapjets and Defendant Tapjets Technologies. Freeford Ltd., 53 AD3d at 39.
Further, "[j]urisdiction over individual defendants employed by a non-domiciliary corporation is appropriate under Section 302(a)(1) where the out-of-state corporate officers were primary actors in the transactions in New York that gave rise to the litigation, and not merely some corporate employee[s] who ... played no part in it." Sea Tow Services Int'l., Inc. v. Pontin, 472 F.Supp.2d 349, 361 (E.D.NY 2007) (internal quotation marks and citations omitted). Here, Defendant Kesselman was the signatory on each document that selected New York as the forum state for any litigation arising from the agreements. See NYSCEF Doc. No. 4 at 18; NYSCEF Doc. No. 5 at 18; NYSCEF Doc. No. 6 at 11; NYSCEF Doc. No. 7 at 3; NYSCEF Doc. No. 8 at 20. Moreover, Plaintiffs allege that Defendant Kesselman misrepresented Starship's financials, specifically falsifying Starship's liabilities to induce Plaintiff Aerogen to enter an agreement. NYSCEF Doc. No. 68 at ¶ 1. Plaintiffs further allege that Defendant Kesselman prepared the accountings with the substantial assistance of Defendant Tsenaeva-Kesselman. Id. at ¶ 33. At the time of the accounting and alleged misrepresentation, Defendant Tsenaeva-Kesselman was also an executive officer of Defendant Tapjets. Id. at ¶ 19.
By agreeing to the forum selection clauses in the agreements, Defendants consented to personal jurisdiction in New York courts. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley, 690 N.Y.S.2d 57, 59 (1999) ("Further, by agreeing to the forum selection clause in the indemnity agreement, defendant specifically consented to personal jurisdiction over her in the courts of New York and thereby waived any basis to dispute New York's jurisdiction.").
Subject Matter Jurisdiction (CPLR § 3211(a)(2))
Defendants further argue the Complaint should be dismissed in accordance with CPLR § 3211(a)(2) for lack of subject matter jurisdiction. NYSCEF Doc. No. 75 at 8. CPLR § 3211(a)(2) allows a party to seek dismissal when "the court has not jurisdiction of the subject matter of the cause of action." "Subject matter jurisdiction has been defined as the 'power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question.'" Thrasher v. U. S. Liab. Ins. Co., 225 N.E.2d 503, 506 (NY 1967) (quoting Hunt v. Hunt, 72 NY 217 (1878)). "If, however, a court lacks subject matter jurisdiction, the parties may not confer it on the court and it may not be created by laches or estoppel . . . [W]hen a court lacks subject matter jurisdiction it may not acquire it by waiver." Morrison v. Budget Rent A Car Sys., Inc., 657 N.Y.S.2d 721, 726 (2d Dept. 1997) (internal citations omitted). "It is blackletter law that a judgment rendered without subject matter jurisdiction is void, and that the defect may be raised at any time and may not be waived." Lacks v. Lacks, 359 N.E.2d 384, 387 (NY 1976).
Defendants argue that the provisions included in the contracts here are insufficient to confer subject matter jurisdiction in New York. NYSCEF Doc. No. 75 at 14. Further, Defendants argue that Plaintiffs' Complaint has not met the standards espoused in Business Corporation Law § 1314, as Plaintiffs did not allege that: (1) Defendants were authorized to do business in New York; (2) that Defendants, other than Defendant Tapjets Holding, Inc., is doing business in New York; and (3) that Defendant Tapjets Holding, Inc., the only Defendant doing business in New York remains a foreign corporation. Id. at 14—15. Finally, Defendants reiterate the argument that Defendants actions do not render Defendants subject to CPLR § 302, thus [*6]barring any application of CPLR § 1314(b)(4). Id. at 15—16
In opposition, Plaintiffs point to New York General Obligations Law §§ 5-1401 and 5-1402. NYSCEF Doc. No. 91 at 12. Plaintiffs contend that these provisions of the General Obligations Law establish that this Court has subject matter jurisdiction over Defendants. Id.
Pursuant to NY Gen. Oblig. Law §§ 5—1401 and 5—1402, any person may bring an action against a foreign corporation or non-resident where:
[T]he action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5—1401 and which (a) is a contract agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.
NY Gen. Oblig. Law § 5—1402.
GOL 5—1402 permits parties to maintain an action in New York state courts pursuant to a contractual agreement providing for a choice of New York law and forum in cases involving $1 million or more. Thus, it 'preclude[s] a New York court from declining jurisdiction even where the only nexus is the contractual agreement' . . . Thus, GOL 5—1402 and CPLR 327(b) prevent a party that has agreed to jurisdiction in New York from later asserting that the New York courts are inconvenient or that they lack jurisdiction.
AIG Fin. Products Corp. v. Penncara Energy, LLC, 922 N.Y.S.2d 288, 290 (1st Dept. 2011) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 690 N.Y.S.2d at 57 (1st Dept. 1999)).
As this Court finds that the forum selection clauses are valid and enforceable, and the interrelated agreements and transactions cover more than one million dollars, this Court has subject matter jurisdiction over Defendants. See NYSCEF Doc. Nos. 2—8.
Defendants also contend that this Court is deprived of subject matter jurisdiction under NY Bus. Corp. Law § 1314(b)(4), which states, in relevant part, that "an action or special proceeding against a foreign corporation may be maintained by another foreign corporation of any type or kind or by a non-resident in the following cases only: . . . (4) Where, in any case not included in the preceding subparagraphs, a non-domiciliary would be subject to the personal jurisdiction of the courts of this state under section 302 of the civil practice law and rules." However, NY Bus. Corp. Law § 1314(c) explicitly states that, "[p]aragraph (b) does not apply to a corporation which was formed under the laws of the United States and which maintains an office in this state." Tapjets was formed under the laws of the United States and maintains an office in New York, accordingly, § 1314(b) does not apply. NYSCEF Doc. No. 75 at 5, 7.
Personal Jurisdiction (CPLR § 3211(a)(9))
Defendants raise no argument or support in the record to find that "service was made under section 314 or 315." Rather, the portion of Defendants' motion seeking to dismiss pursuant to CPLR § 3211(a)(9) is moot pursuant to the Court's Decision and Order as to Motion Sequence 5 as discussed supra. See also NYSCEF Doc. No. 126 (Affirmation/Affidavit of Service Re: Defendants Emailed Initiatory Papers with Decision and Order dated 08/12/2024)
Similar Action Pending in Any State (CPLR § 3211 (a)(4))
CPLR § 3211 (a)(4) allows dismissal of an action when "there is another action pending between the same parties for the same cause of action in a court of any state or the United [*7]States." [emphasis added]. "CPLR 3211(a)(4) vests a court with broad discretion in considering whether to dismiss an action on the ground that another action is pending between the same parties on the same cause of action." Whitney v. Whitney, 440 N.E.2d 1324, 1324 (NY 1982). "The critical element is whether both suits arise out of the same subject matter or series of alleged wrongs." Jadron v. 10 Leonard St., LLC, 2 N.Y.S.3d 563, 565 (2d Dept. 2015). If the actions in the separate jurisdictions are between the same parties and either involve the same cause of action or seek "to recover for the same alleged harm based on the same underlying events," then "New York courts generally follow the so-called 'first-in-time' rule, which provides 'the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere.'" Syncora Guarantee Inc. v. J.P. Morgan Securities LLC, 970 N.Y.S.2d 526 (1st Dept. 2013) (quoting White Light Productions, Inc. v. On the Scene Productions, Inc., 660 N.Y.S.2d 568 (1st Dept. 1997)).
Defendants contend that the Florida Action features the same: (1) "subject matter;" (2) "documents on which the parties rely;" and (3) "activities." NYSCEF Doc. No. 75 at 17. Defendants argue that the only differences between the two actions is the addition of one plaintiff and several corporate defendants. Id. at 17. Defendants contend that the absence of these parties in the Florida Action is inconsequential as there are substantial similarities in the parties between the actions. Id. at 17. Defendants argue that the Florida Action should take precedence under the "first-in-time rule." Id. at 16—17. Plaintiffs oppose Defendants contentions by arguing, first, that the present matter is broader as it: (1) "involves all necessary parties, including Aerogen, Tsenaeva-Kesselman, and the other Tapjet Parties who are not included in Kesselman's Florida Complaint;" and (2) alleges additional claims arising out of the parties' agreements. NYSCEF Doc. No. 91 at 19. Plaintiffs contend that the "first-in-time rule" is inapplicable here as the actions are not sufficiently similar. Id. at 20.
This Court is unconvinced by Defendants' arguments. First, the present action is more comprehensive than the Florida Action. While courts maintain a generally favorable view of the "first-in-time" rule, "'[t]he practice of determining priorities between pending actions on the basis of dates of filing is a general rule, not to be applied in a mechanical way, regardless of other considerations.'" White Light Productions, Inc., 660 N.Y.S.2d 568, 573 (quoting Brierwood Shoe Corp. v. Sears, Roebuck and Co., 479 F. Supp. 563 (S.D.NY 1979)). Further, New York courts have routinely determined that more comprehensive actions are favored, even if they were not the first to be filed. See E D & F Man Sugar Ltd. v. Gellert, 158 N.Y.S.3d 827 (1st Dept. 2022) (dismissing the earlier filed action in favor of a later filed, but more comprehensive, action); IRX Therapeutics, Inc. v. Landry, 55 N.Y.S.3d 4 (1st Dept. 2017) ("The Texas action is thus more comprehensive than this declaratory judgment action and will address defendant's claim that the parties never entered into an enforceable contract; moreover, dismissal of this action in favor of the Texas action will avoid duplicative, vexatious litigation."). 
The Florida Action involves only two parties: Plaintiff Starship and Defendant Kesselman. NYSCEF Doc. No. 71. That action seeks to recover under various contractual theories all alleging that Plaintiff Starship failed to honor the financial terms of only: the Bombardier Management Agreement; and (2) the Cirrus Management Agreement. Id. By comparison, the present action includes additional parties: (1) Plaintiff Aerogen LLC; (2) Defendant Tapjets Holdings, Inc; (3) Defendant Tapjets, Inc.; (4) Defendant Tapjets Technologies, Inc.; and (5) Defendant Tsenaeva-Kesselman. NYSCEF Doc. No. 68. Further, the present action seeks additional recovery by: (1) seeking books and records from Defendants [*8]Kesselman and Tapjets; (2) alleging breach of representations and warranties against Defendant Tapjets; (3) alleging fraudulent misrepresentations by Defendant Kesselman; and (4) alleging negligent misrepresentations by Defendant Tsenaeva-Kesselman. Id. Finally, the present action seeks to recover under not just the Cirrus and Bombardier Management Agreements, but also under the full suite of interrelated agreements. Id. Accordingly, the action before this Court is more comprehensive than the Florida Action.
Defendants unconvincingly contend that the additional parties here are simply a red herring as they are solely corporate entities. However, even if these additional parties are corporate entities, New York law identifies each of these parties as a separate legal entity with distinct legal rights. See, e.g., Franklin St. Realty Corp. v. NYC Envtl. Control Bd., 83 N.Y.S.3d 41 (1st Dept. 2018), aff'd, 145 N.E.3d 204 (NY 2019) ("Of course, it is fundamental that individuals, corporations, and partnerships are each recognized as separate legal entities, and in this statutory context constitute 'others' regardless of the common principal ownership or connection between the entities."). Furthermore, "while dismissal under CPLR 3211(a)(4) is not necessarily defeated by substantial, as opposed to complete, identity of parties, which generally is present when at least one plaintiff and one defendant is common in each action, individual principals of a corporation are legally distinguishable from the corporation itself." Morgulas v. J. Yudell Realty, Inc., 554 N.Y.S.2d 597, 599—600 (1st Dept. 1990) (internal citations omitted). Thus, while the inclusion of additional corporate entities may be a formality, to disregard the same would be to disregard any legal rights these entities may possess. 
Considering the relative comprehensiveness of the present matter in comparison to the Florida Action, the discretionary nature of CPLR § 3211(a)(4), and the stay enacted in the Florida Action pending the final resolution of the present matter, the Court declines to dismiss the present matter pursuant to CPLR § 3211(a)(4).
Forum Non Conveniens (CPLR § 327)
Defendants argue that the present matter should be dismissed or stayed until the Florida Action has resolved pursuant to the doctrine of forum non conveniens, which "permits a court to dismiss an action when, although it may have jurisdiction over a claim, the court determines that 'in the interest of substantial justice the action should be heard in another forum.' The doctrine is flexible, requiring the balancing of many factors in light of the facts and circumstances of the particular case." Nat'l Bank and Tr. Co. of N.A., Ltd. v. Banco De Vizcaya, S.A., 531 N.E.2d 634, 635 (NY 1988) (quoting CPLR § 327). 
The factors to be considered on such a motion include: 'the burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit . . . The court may also consider that both parties to the action are nonresidents . . . and that the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction . . . No one factor is controlling'
Shin-Etsu Chem. Co., Ltd. v. 3033 ICICI Bank Ltd., 777 N.Y.S.2d 69 (1st Dept. 2004) (quoting Islamic Republic of Iran v. Pahlavi, 467 N.E.2d 245 (NY 1984)). However, as referenced supra, "where a party to a contract has agreed in advance of litigation to submit to the jurisdiction of a court, she is later precluded from attacking that court's jurisdiction on grounds of forum non conveniens." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 690 N.Y.S.2d at 60. Pursuant to the analysis of the Court supra, Defendants submitted to this jurisdiction when Defendants entered into: (1) the Loan Security Agreements; (2) the Loan Note Agreement; and (3) MIPSA, with each of these agreements designating New York in their respective forum selection clauses. [*9]Accordingly, this Court finds that, because the Defendants submitted to the jurisdiction of this Court in the forum selection clause, Defendants cannot rely on a forum non conveniens argument.
Accordingly, it is hereby
ORDERED that Defendants' motion to dismiss is denied in its entirety.
The foregoing constitutes the Decision and Order of this Court.
DATE September 27, 2024
ANAR RATHOD PATEL, A.J.S.C.
Addendum A

Date

Agreement

Parties

Signatories

Choice of Law/Venue

[*10]6/19/19

Management Agreement (Bombardier Aircraft)

Tapjets Holdings Inc. and its agents, subsidiaries, or assigned, included TapJets Inc., TapJets Technologies Inc. NYSCEF Doc. No. 2, at 2.
Starship 1 LLC. NYSCEF Doc. No. 2, at 2.

Konstantin Illiushko on behalf of TapJets Holdings Inc., in his capacity as Director of Operations. NYSCEF Doc. No. 2, at 15.
Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Manager. NYSCEF Doc. No. 2, at 15.

Governing Law. "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas or Florida. If any provision of this Agreement conflicts with any statute or rule of law of the State of Texas or Florida or is otherwise unenforceable, such provision shall be deemed null and void only to the extent of such conflict or unenforceability and shall be deemed separate from and shall not invalidate any other provision of this Agreement." NYSCEF Doc. No. 2, at §13.1.
Venue. "Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby may be instituted in any state or federal court in the State of Texas." NYSCEF Doc. No. 2, at §13.7.

[*11]6/19/19

Management Agreement (Cirrus Aircraft)

Tapjets Holdings Inc. and its agents, subsidiaries, or assigned, included TapJets Inc., TapJets Technologies Inc. NYSCEF Doc. No. 3, at 2.
Starship 1 LLC. NYSCEF Doc. No. 3, at 2.

Konstantin Illiushko on behalf of TapJets Holdings Inc., in his capacity as Director of Operations. NYSCEF Doc. No. 3, at 15.
Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Manager. NYSCEF Doc. No. 3, at 15.

Governing Law. "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas or Florida. If any provision of this Agreement conflicts with any statute or rule of law of the State of Texas or Florida or is otherwise unenforceable, such provision shall be deemed null and void only to the extent of such conflict or unenforceability and shall be deemed separate from and shall not invalidate any other provision of this Agreement." NYSCEF Doc. No. 3, at §13.1.
Venue. "Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby may be instituted in any state or federal court in the State of Texas." NYSCEF Doc. No. 3, at §13.7.

[*12]9/24/23

Loan and Aircraft Security Agreement (Bombardier Aircraft)

Starship 1 LLC. NYSCEF Doc. No. 4, at 1.
Peter Constantine Markos Nomikos. NYSCEF Doc. No. 4, at 1.
Aerogen LLC. NYSCEF Doc. No. 4, at 1.

Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Manager. NYSCEF Doc. No. 4, at 18.
Peter Constantine Markos Nomikos on behalf of Aerogen LLC, in his capacity as Manager. NYSCEF Doc. No. 4, at 18.
Peter Constantine Markos Nomikos acting for himself and on his own behalf. NYSCEF Doc. No. 4, at 18.

Jurisdiction. "Debtor hereby irrevocably consents and agrees that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement or any of the other Loan Documents may be instituted or brought in the courts of the State of New York or in the United States Courts for the Southern District of New York, as Lender may elect or in any other state or Federal court as Lender shall deem appropriate, and by execution and delivery of this Agreement, Debtor hereby irrevocably accepts and submits to, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of any such court, and to all proceedings in such courts." NYSCEF Doc. No. 4, at §8.6. Governing Law; Binding Effect. "This Agreement shall be construed and enforced in accordance with, and the rights of both parties shall be governed by, the internal laws of the State of New York, including all matters of construction, validity, and performance." NYSCEF Doc. No. 4, at §8.7.

[*13]9/24/23

Loan and Aircraft Security Agreement (Cirrus Aircraft)

Starship 1 LLC. NYSCEF Doc. No. 5, at 1.
Peter Constantine Markos Nomikos. NYSCEF Doc. No. 5, at 1.
Aerogen LLC. NYSCEF Doc. No. 5, at 1.

Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Manager. NYSCEF Doc. No. 5, at 18.
Peter Constantine Markos Nomikos on behalf of Aerogen LLC, in his capacity as Manager. NYSCEF Doc. No. 5, at 18.
Peter Constantine Markos Nomikos acting for himself and on his own behalf. NYSCEF Doc. No. 5, at 18.

Jurisdiction. "Debtor hereby irrevocably consents and agrees that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement or any of the other Loan Documents may be instituted or brought in the courts of the State of New York or in the United States Courts for the Southern District of New York, as Lender may elect or in any other state or Federal court as Lender shall deem appropriate, and by execution and delivery of this Agreement, Debtor hereby irrevocably accepts and submits to, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of any such court, and to all proceedings in such courts." NYSCEF Doc. No. 5, at § 8.6. Governing Law; Binding Effect. "This Agreement shall be construed and enforced in accordance with, and the rights of both parties shall be governed by, the internal laws of the State of New York, including all matters of construction, validity, and performance." NYSCEF Doc. No. 5, at § 8.7.

[*14]9/25/23

Loan Note 

Starship 1 LLC. NYSCEF Doc. No. 6, at 1.
Peter Constantine Markos Nomikos. NYSCEF Doc. No. 6, at 1.
Aerogen LLC. NYSCEF Doc. No. 6, at 1.

Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Manager. NYSCEF Doc. No. 6, at 11.
Peter Constantine Markos Nomikos on behalf of Aerogen LLC, in his capacity as Manager. NYSCEF Doc. No. 6, at 11.
Peter Constantine Markos Nomikos acting for himself and on his own behalf. NYSCEF Doc. No. 6, at 11.

"This Note and any issues, disputes, or claims arising out of or in connection with it, whether such disputes or claims are contractual or non-contractual in nature (such as claims in tort, for breach of statute or regulation, or otherwise) shall be governed by, construed and interpreted in accordance with the laws of the State of New-York (United States of America)." NYSCEF Doc. No. 6, at § 9.1.
"Any dispute or claim that may arise out of or in connection with this Note shall be submitted to the sole and exclusive jurisdiction of the courts of the State of New-York (United States of America)." NYSCEF Doc. No. 6, at § 9.2.

[*15]9/25/23

Release Letter 

Starship 1 LLC. NYSCEF Doc. No. 7, at 1.
Peter Constantine Markos Nomikos. NYSCEF Doc. No. 7, at 1.
Aerogen LLC. NYSCEF Doc. No. 7, at 1.

Eugene Kesselman on behalf of TAPJETS HOLDINGS INC. and TapJets Parties, in his capacity as Chief Executive Officer. NYSCEF Doc. No. 7, at 3.

"This letter shall be governed by, construed and interpreted in accordance with the laws of the State of New York (United States of America) and any dispute or Claim that may arise out of or in connection with this letter, or its subject matter or formation (including non-contractual disputes or Claims) shall be submitted to the exclusive jurisdiction of the courts of the State of New York (United States of America)." NYSCEF Doc. No. 7, at 4.

[*16]10/4/23

Membership Interest Purchase and Sale Agreement, 

Tapjets Holdings Inc. NYSCEF Doc. No. 8, at 1.
Aerogen LLC. NYSCEF Doc. No. 8, at 1.

Eugene Kesselman on behalf of Starship 1 LLC, in his capacity as Chief Executive Officre. NYSCEF Doc. No. 8, at 20.
Peter Constantine Markos Nomikos on behalf of Aerogen LLC, in his capacity as Manager. NYSCEF Doc. No. 8, at 20.

Governing Law; Construction. "This Agreement shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of New York applicable to a contract executed and performed in such state, excluding any conflicts of law rule or principle that would refer the governance, interpretation, construction or enforcement of this Agreement to the laws of another jurisdiction." NYSCEF Doc. No. 8, at §11(e).

Footnotes

Footnote 2:At the time that the Loan and Aircraft Security Agreements were signed, Plaintiff Starship was owned by Defendant Tapjets. Defendant Kesselman signed these agreements on behalf of Starship in his capacity as manager of Defendant Tapjets.

Footnote 3:Courts adhere to the contractual principle that "a subsequent contract regarding the same matter will supersede the prior contract." Hyuncheol Hwang v. Mirae Asset Sec. (USA) Inc., 85 N.Y.S.3d 38, 39 (2018) (citing Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011)). Therefore, the agreements designating New York choice of law, selecting New York courts as the proper forum, and granting New York courts exclusive jurisdiction supersede the agreements identifying Texas and Florida.